**People of the State of Illinois, Plaintiff-Appellee, v. Ben Murphy, Defendant-Appellant.**

**Gen. No. 53,937.**

First District, Second Division.

April 21, 1970.

71

Leonard Karlin and Edward H. Steinlauf, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Assistant State's Attorney, of counsel), for appellee.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

The defendant had been indicted for committing the crime of rape, and was tried in the Circuit Court of Cook County without a jury. The only issue presented is whether defendant was proved guilty by clear and convincing evidence. Ill Rev Stats 1965, c 38, § 11–1, defines rape as follows: "(a) A male person of the age of 14 years and upwards who has sexual intercourse with a female, not his wife, by force and against her will, commits rape."

Ethel Thomas, the complaining witness, testified that on April 19, 1967, the date of the alleged rape, she was 30 years old, and lived on the second floor of an apartment building at 1509 South Christiana Avenue in Chicago. She finished work at Schwab Rehabilitation Hospital, 1701 South California Avenue, at 11 o'clock on the night in question, and took a bus to Keeler and Roosevelt, where she went into a tavern for about fifteen minutes. She testified that there was one bright light outside the entrance to her home, but the bulb had been removed

from the light inside the vestibule; that while she was standing at the entrance door searching for her keys, the defendant put his right arm around her neck and told her he would kill her if she "hollered." She screamed and the defendant pulled her out of the hallway into the street, telling her, "Ethel, I have wanted to have you for a long time." When she turned around and saw his face she recognized the defendant as "Ben" who had previously gone with a friend of hers, and whom she had seen playing in a band at a tavern at Sawyer and Ogden, near her home.

The complainant testified further that the defendant told her to walk around the corner to a vacant apartment building; he then pushed her through the door to some stairs leading up to the second floor, and told her to take her clothes off. When she refused he shoved her to the floor, after which she removed the levis she was wearing, and the defendant removed her underclothing and had intercourse with her.

Although the defendant had told the complainant he would kill her if she notified the police, she called them when she was able to get to her apartment at about 2:30 a. m. When the police arrived at about 3:00 a. m., they took her to Mt. Sinai Hospital where she was examined by Dr. Ghorbani. It was stipulated that if he were to testify the doctor would state that a vaginal smear taken at that time confirmed the presence of spermatozoa; that the complainant was nervous at the time of the examination; and that she bore no bruises or lacerations.

On May 12, 1967, the complainant was in the Jestic Tavern when she saw the defendant. She testified that she ran out before he saw her, stopped a squad car and told the police the defendant was in the tavern, after which the police arrested the defendant. It was stipulated that if the police officers who responded to complainant's

73

call on April 19 were to testify they would state that they had turned over to the Crime Detection Laboratory certain objects obtained from the complainant; namely, one physician's report, one pair of women's panties and two vaginal smears. It was also stipulated that if Sergeant Price were to testify he would state that a microscopic examination of the underwear and the vaginal smear showed the presence of spermatozoa.

The complaining witness testified that after defendant's arrest she had talked with a man who identified himself as the defendant's father, and that the man asked her to drop the case, stating he would give her $50 if she would not go to court. She further testified that she had moved from the Christiana Avenue address after the occurrence and was presently living at 3451 West Douglas. She stated that she had been married in 1956, but was not living with her husband, nor was he the father of her two children; that the name of the father was Aaron Cunningham, but she had not been married to him.

 The defendant argues that the complainant bore no signs of having struggled or having resisted, and that there was no deadly weapon employed; that there was no showing of "compulsion, force nor threat of force on the part of the man." However, to take that view would be to disregard the complainant's testimony that the defendant had put his arm around her neck and threatened her with death if she screamed. She had screamed once, then he forced her into the street in the early hours of the morning; he had forced her to go to the apartment where the sexual act took place. There he repeated his threat, and when she did not willingly remove her clothes, he pushed her onto the ground. There is no requirement in the law that when an attempt is made to rape a woman she must subject herself to possible serious physical harm. Under the circumstances in this case it would seem that a reasonable person would

74

fear that failure to comply with defendant's request would result either in death or serious injury. As to whether there was a deadly weapon on defendant's person at the time is immaterial; the question is the futility of the complainant's resistance under the circumstances. People v. Smith, 32 Ill2d 88, 92, 203 NE2d 879.

Furthermore, we must consider that immediately after the incident the complainant reported it to the police, and within hours she had been examined by a doctor in a hospital. Prompt complaint serves as corroboration of her testimony. People v. Hayes, 93 Ill App 2d 198, 204, 236 NE2d 273; People v. DeFrates, 33 Ill2d 190, 196, 210 NE2d 467.

The fact of immediate report by the complainant is not inconsistent with defendant's version of what had occurred. In any case, we cannot lightly set aside the fact that the trial court was in a position to see and hear the testimony of both defendant and complainant and determined that the complainant's story was sufficient to prove a case of rape against the defendant.

The defendant points out that the complainant said she had worked at the Schwab Rehabilitation Center for seven months, yet she gave an incorrect address for the Center. The implication is that because of this mistake we should consider that the complainant was not competent to testify as to details, that she had a faulty memory and lacked ability to tell the truth. However, we cannot believe the defense suggests that her failure to give a correct address would require the court to find the complainant incapable of accurately recalling the details surrounding her own rape. Furthermore, her testimony concerning the address was never impeached at the trial. In his brief before this court the defendant's counsel simply asserts that the witness was wrong. Assuming that she was wrong in the address, it does not necessarily affect her other testimony.

According to the defendant's version, he and the complainant had gone to the Jet Hotel where they both signed the register before going to a room and having sexual intercourse. The register, however, was not produced at the trial, and there was no explanation as to whether there had been any attempt to locate it. During oral argument counsel for defendant mentioned that the hotel no longer existed and that apparently the files had all been destroyed. Again, this explanation is beyond the scope of the record. We know only that the defendant testified that he and the complainant signed a register at the hotel where he says the sexual acts took place. According to the defendant, he offered the complainant $5 but she wanted $10, and when he refused she said she would "get even" with him.

Eddie Garvin, an alibi witness for the defendant, testified on direct examination that on April 19, 1967, he saw the defendant and the complainant together in the neighborhood bar. On cross-examination, however, when asked if he could give the exact date on which he had met the defendant, he could not recall it. He was then asked, "How do you know that you saw Ben on April 19, 1967?" He said, "I don't know exactly what date it was," and admitted that when he testified he had seen the defendant and complainant together on April 19, at the Jestic Lounge, he was not sure about the date. Thus, the defendant's claim that "the presence of the two parties for a period of time at the Jestic Lounge is corroborated by Eddie Garvin" does not accurately reflect Garvin's impeached testimony.

The question now before this court is whether the complainant's testimony, if believed, is sufficient to sustain a conviction for rape against the defendant. In People v. Qualls, 21 Ill2d 252, 171 NE2d 612, the Supreme Court reversed a conviction for rape when it found that (a) the prosecutrix's testimony lacked verisimilitude; and

(b) there was no testimonial, factual or circumstantial corroboration of the material elements of force, and lack of consent. In that case, according to her own version of the facts, the prosecutrix had sat nude in the kitchen of one of the two defendants, sipping coffee for half an hour, then engaging in further acts of intercourse with both defendants. Although she had been alone in a room where she could have used a telephone she made no attempt to call for help, nor did she attempt to escape when it appeared to be possible. Her account was that she had been with her husband; that he fled when two men approached their car demanding money; and that one of the men then supposedly approached her. However, her husband was not called upon to corroborate her testimony, although he was at the trial. The court reversed the judgment on the ground that the defendants had not been proved guilty beyond a reasonable doubt.

In People v. Faulisi, 25 Ill2d 457, 185 NE2d 211, another rape conviction was reversed when the complaining witness admitted having let the defendant into her apartment while she was dressed only in pajamas which were partially transparent. She further admitted kissing the defendant for ten or fifteen minutes when he started removing her pajamas. She made no detailed explanation of her attempt to ward off the defendant except to say she tried to fight him off. She had a cut near one eye, but other bruises she claimed to have sustained were not noticed by three other witnesses who had seen her the day following the incident. Again, the court held that the complaining witness' testimony was not sufficiently convincing to sustain a conviction for rape.

It is worthy of note that these cases indicate the kind of circumstances under which rape convictions have been reversed. However, a basic distinction between those and the present case is that Ethel Thomas' version of the facts contains none of the implausible features contained

in the reversed cases. There exists no reason, therefore, for being suspicious of her story, since she did not admit to sitting nude and sipping coffee with her assailant, nor did she admit having allowed the defendant into her apartment and kissing him while partially dressed. Rather, her account relates a threatening attack with no enticement on her part. Her testimony was clear and convincing.

██ The question before us is whether or not her testimony, if believed, was sufficient to convict; and if that is answered affirmatively, the only remaining question is whether she was telling the truth. The trier of fact is in a far superior position than this court to determine that; therefore, we do not lightly overturn its findings as to the credibility of witnesses. We have concluded that the complainant's account of the incident was clear and convincing, and as the trial court obviously believed her, there is no reason to disturb the judgment. The judgment is affirmed.

Affirmed.

LYONS and BURKE, JJ., concur.