THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALAN MONTGOMERY, Defendant-Appellant.

(No. 57425;

First District (2nd Division)—April 16, 1974.

Paul Bradley, Deputy Defender, of Chicago (Steven Clark, Assistant Appellate Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Barry Rand Elden, Assistant State's Attorneys, of counsel), for the People,

Mr. JUSTICE STAMOS delivered the opinion of the court:

Following a bench trial, defendant, Alan Montgomery, was found guilty of rape and deviate sexual assault and was sentenced concurrently to a term of 4 to 8 years on each conviction. On appeal, defendant contends that he was not proven guilty of the two offenses beyond a reasonable doubt; that he was denied the right to fully cross-examine a State's witness; that hearsay testimony was erroneously admitted into evidence; and that the transfer statute which allowed defendant to be tried as an adult rather than a juvenile was unconstitutional.

The complaint testified that on June 20, 1970, she was 12 years old and living with her parents. At 10 P.M. she was sent by her mother to the store. On her way to the store, she saw defendant who began to follow and talk to her. She reached the store, purchased the items, but as she started home defendant began chasing her. Defendant caught her, placed a sharp object against her throat and demanded that she come with him. He made her cross the street where another young male, whom she identified as Johnny Wilson, was waiting. With the sharp object still at her throat, defendant took her to the basement of a nearby abandoned building where he forced complainant to remove her clothes. Defendant then raped her and subjected her to an act of oral intercourse. During these events, complainant felt a sharp object touch her, and at some point, defendant cut off a patch of her hair. Defendant threatened to kill her if she "hollered" and repeatedly told her that his friend had a gun. Johnny Wilson, who was waiting in the next room until defendant was finished, then forced her to engage in the same two sexual acts. Before leaving complainant alone in the abandoned basement, defendant blindfolded her with a sleeve cut from her sweater, and told her to remain there until he returned. After approximately 5 minutes, complainant, while crying and attempting to find her way out of the dark basement, heard her mother calling her.

On cross-examination the witness testified that although she felt a sharp object on several occasions, she never actually saw a knife or other weapon; that defendant had struck her in the face before the act of intercourse; that during the act of intercourse, she cried out and was made to kiss defendant; but that during the entire episode, she did not offer any physical resistance, and made no attempt to escape.

The mother of complainant testified that at 10:30 P.M. on June 20, 1970, she, concerned because her daughter had not returned from the store, went to look for her. While standing outside, she observed Johnny Wilson running past her house. She proceeded to call out her daughter's name, and eventually found her daughter naked, screaming and crying in the basement of the abandoned building. In response to her question,

"How did you get there?," the girl cried out that she had been raped by two boys. After giving the girl a coat to cover herself, the mother directed her other daughter to call the police. The witness noticed that a portion of her daughter's hair had been cut off. Subsequently, the witness obtained the girl's clothing which had been left in the building; she noticed that a sleeve had been cut from her daughter's sweater.

The two police officers, Robert Mason and Leo Dorrociak, who arrested the defendant a few hours after the alleged rape, testified that initially defendant denied raping anyone but that when he was confronted with the complaining witness he admitted having intercourse with her, but that it was with her consent.

Ghodratolla Javherr, a physician who examined complainant shortly after the incident, testified that a vaginal smear positively indicated the presence of sperm. A small vaginal bruise was observed, but there were no other bruises or marks on the girl's body.

The final prosecution witness was Johnny Wilson, the defendant's accomplice in the incident. He testified that as a result of his participation in the events of that night, he pled guilty in Juvenile Division to the charge of battery and served 8 months with the Illinois Youth Commission and was on parole at the time of the trial.[1] He stated that on the evening in question he and defendant were walking around and defendant said he wanted to have sex. He told how defendant grabbed the girl and put a 10-inch butcher knife around her neck. All three went to the basement of the abandoned building where, knife in hand, defendant demanded that she remove her clothes. Defendant cut the girl's bra off with his knife and warned her that she "better act right." Defendant had vaginal and oral intercourse with complainant. Wilson testified that during the act of intercourse, complainant was crying, but eventually put her arms around defendant, kissed him, and did not resist or fight back. After the witness then subjected the girl to the same acts, defendant blindfolded her with some kind of cloth. Upon leaving the building, the witness saw the victim's mother.

On cross-examination, the witness testified that both he and defendant were members of the Black P. Stone Nation, a Chicago street gang; and that his brother, Dennis Wilson, had fought with defendant 2 years ago.

Alan Montgomery, called as a witness on his own behalf, testified that he was with three other friends on the night in question. Johnny Wilson was not among them. He stated that he knew complainant prior to the incident, having met her at the home of a mutual friend a few

---

[1] Since, at the said time, he was under the age of 14, he could not have been charged with rape. Ill. Rev. Stat. 1969, ch. 38, par. 11—1(a).

years ago. While walking down the street with his companions, complainant had initiated a conversation and offered to buy some liquor for him. She gave $5 to Alan who got a "winehead" to make the purchase. All five proceeded to the basement to drink it.

The witness stated that he and complainant drank a little and discussed their mutual friend. They were alone in one room and he started "sweet-talking" and kissing her. After asking her if she "was game" and receiving an affirmative answer, he had intercourse with her. According to the defendant, Johnny Wilson showed up while the intercourse was in progress. The witness stated that Wilson did not have sexual relations with the girl, and that he himself did not engage in oral intercourse with her. When he and complainant were done, he offered to walk her home, but she was afraid her mother would be looking for her so she left on her own. After she walked out, the witness discovered that she had left her bag so he sent Johnny Wilson after her with it. Defendant denied having a knife on the night of June 20, 1970, or forcing complainant to have intercourse with him.

Ollie McGee, the defendant's grandfather, testified that defendant came home before 10:30 on the night of June 20, 1970.

OPINION

We address ourselves first to defendant's contention that the State failed to establish beyond a reasonable doubt that the acts of intercourse were forcible and against the will of the complaining witness. The gist of defendant's argument is that there is an absence of resistance on the part of complainant to demonstrate that the act was clearly against her will. In support thereof, defendant points out that complainant did not cry out when forcibly taken from the street, did not attempt to escape from or physically resist defendant, and voluntarily removed her clothes.

■■ In a conviction for rape, while the evidence must prove that the act was against the will of complainant, there is no definite standard for determining the amount of resistance required. Such a determination must be made from the facts and circumstances of each case. (*People v. Strong*, 120 Ill.App.2d 52, 256 N.E.2d 76.) Resistance and outcry are unnecessary, however, where the victim is restrained by fear of violence or where such acts would be futile and endanger the life of the female. *People v. Pointer*, 6 Ill.App.3d 113, 285 N.E.2d 171; *People v. Sims*, 5 Ill.App.3d 727, 283 N.E.2d 906.

■■ Looking to the circumstances of the present case, the record reveals that upon encountering complainant, defendant placed a sharp object against her throat, which Johnny Wilson described as a ten-inch butcher knife. At various times throughout the incident, the 12-year-old victim felt the sharp object touch her person. She was threatened with

her life and, at one point prior to the act of intercourse, was struck by defendant. Under these circumstances, we reject defendant's notion that a 12-year-old girl who reasonably discerns a threat on her life is required to affirmatively resist her attacker, and conclude that the evidence, if credible, sufficiently supports the finding that the attack was forcible and against the will of complainant. *People v. Walton*, 6 Ill.App.3d 17, 784 N.E.2d 508.

■■ The issue of whether the acts of intercourse were forcible or consensual is ultimately one of credibility. In this regard, it is neither the duty nor the privilege of a reviewing court to substitute its judgment as to the weight of disputed evidence or the credibility of witnesses for that of the trier of fact who heard the evidence presented and observed the demeanor of the witnesses (*People v. Novotny*, 41 Ill.2d 401, 244 N.E.2d 182.), and a reviewing court will not set aside a finding of guilty unless the evidence is so palpably contrary to the finding or so improbable or unsatisfactory as to cause a reasonable doubt as to the guilt of the accused. (*People v. Sumner*, 43 Ill.2d 228, 252 N.E.2d 534.) A careful examination of the record persuades us that complainant's testimony was clear and convincing and was corroborated by the testimony of Johnny Wilson and the victim's mother. We conclude, therefore, that the evidence was sufficient to support the convictions for rape and deviate sexual assault.

Defendant also contends that he was denied the right to fully cross-examine and impeach a key government witness in that he was improperly denied access to certain juvenile court records. The factual setting which gives rise to the contention began immediately prior to the resting of the defense. At that time, defense counsel stated:

> "I would ask that for the State's cooperation for certain documents involved in the case of John Wilson through the Juvenile Court. I wonder if they have any knowledge or have access to any of the records available in that case."

The court asked defense counsel the object of his inquiry, suggesting that the State might stipulate to the expected findings. Defense counsel stated that he had no idea of what he was going to find and characterized his request as a "fishing expedition" for possible impeaching evidence. The court responded by stating, "I will certainly give you any opportunity you think would be helpful," delayed the cause until the following day, and suggested that defense counsel inquire at the Juvenile Court. Upon resumption of the proceedings, the following colloquy occurred:

> "THE COURT: Yesterday you requested that the matter be put over until this morning. Are you now ready to proceed?
> DEFENSE COUNSEL: Yes, I am, Your Honor. I was informed

by Mr. Dohr, who is in charge of the State's Attorney's office in Juvenile Court, that the matters involving James Wilson [sic], that I requested and attempted to obtain yesterday, are privileged, and that they are not obtainable at this point.

I have no further evidence at this point; the defense rests its case."

For the first time on appeal, defendant assigns as error his denial of access to the Juvenile Court records of Johnny Wilson, relying upon *People v. Norwood*, 54 Ill.2d 253, 296 N.E.2d 852, which held that section 2—8 of the Juvenile Court Act (Ill. Rev. Stat. 1969, ch. 37, par. 702—8) does not bar access to records of juvenile delinquents when such records are sought to impeach the credibility of the juvenile as a witness.

■■ We initially note that defense counsel did not seek a court order to obtain the records, and made no objection to his failure to gain access to them either at trial or in his post-trial motion. The law is well-settled that defense counsel's inaction constitutes a waiver of any defect and does not present a reviewable issue. (*People v. Delafosse*, 36 Ill.2d 327, 223 N.E.2d 125; *People v. Barbee*, 35 Ill.2d 407, 220 N.E.2d 401; *People v. Hunter*, 23 Ill.2d 177, 177 N.E.2d 138.) Nor are we persuaded by defendant's assertion that his right to a fair trial was substantially affected by the defect, which thereby constituted "plain error." Ill. Rev. Stat. 1971, ch. 110A, par. 615.

■■ In *Norwood*, the case relied upon by defendant, the bulwark of the State's case against the accused consisted of the testimony of William Washington, a juvenile who was an accomplice in the commission of the crime. In the words of the Illinois Supreme Court, "the credibility of William Washington was critical, for if his testimony was not believed the defendant could not have been convicted." (54 Ill.2d at 255.) Based upon section 2—8 of the Juvenile Court Act,[2] the trial court sustained numerous objections, on cross-examination, relating to the police record of Washington. In reversing the conviction, the supreme court noted:

" 'The testimony of an accomplice is competent evidence, and, although uncorroborated, may be sufficient to sustain a conviction if it is of such a character as to prove guilt beyond a reasonable doubt. It is always, however, subject to grave suspicion and

---

[2] Section 2—8 of the Juvenile Court Act provides:

"(3) The records of law enforcement officers concerning all boys under 17 and all girls under 18 must be maintained separate from the records of arrests and may not be open to public inspection or their contents disclosed to the public except by order of the court or when the institution of criminal proceedings has been permitted under Section 2—7 or such a person has been convicted of a crime and is the subject of pre-sentence investigation or proceedings on an application for probation."

should be acted on with great caution. [Citations.]'" 54 Ill.2d at 256.

The court then concluded that the statute in question "is not to be construed as prohibiting access to the records of juvenile delinquents when those records are sought in order to impeach the credibility of the juvenile as a witness by showing a possible motive for testifying falsely." 54 Ill.2d at 257.

An examination of the present record reveals that the trial court imposed no limitations on defense counsel's inquiries into the witness' juvenile record, his gang associations, or any other matters reflecting upon his credibility and bias. In addition, unlike *Norwood*, the conviction here did not rest entirely upon the testimony of the accomplice, but rather, was supported by the clear and convincing testimony of complainant which was corroborated by the testimony of her mother and the examining physician. Under these circumstances, coupled with defendant's failure to adequately present the issue to the trial court, we conclude that no plain error was committed.

Defendant next assigns as error the victim's mother's testimony that in response to the question "what happened?" her daughter stated that "she had been raped." It is asserted that the statement was prejudicial hearsay not falling within the "spontaneous utterance" exception. Inasmuch as the statement was made in response to a question asked 5 minutes after the occurrence, defendant argues that it lacked the element of spontaneity. (*People v. Taylor*, 48 Ill.2d 91, 268 N.E.2d 865; *People v. Stewart*, 130 Ill.App.2d 623, 264 N.E.2d 557.) We deem it sufficient to say that the cases cited by defendant are factually distinguishable from the instant case.

■■ In *People v. Damen*, 28 Ill.2d 464, 471, 193 N.E.2d 25, the Illinois Supreme Court set forth the requirements for the admissibility of spontaneous utterances:

> "'Three factors are necessary to bring a statement within this exception to the hearsay rule: (1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence.'"

In *Damen*, the complaining witness had made a statement to the police in response to the question, "What happened?" The court held that this single question was insufficient to destroy the spontaneity of the subsequent statement. We believe the factual posture of the present situation parallels that found in *Damen* and conclude that the statement of the complaining witness was properly admitted into evidence.

■■ Finally, defendant contends that the statute under which he was

transferred from Juvenile Court to Criminal Court is unconstitutionally vague and denied him due process of law. The statutory provision[3] in effect at the time defendant was transferred provides as follows:

> "If a petition alleges commission by a minor 13 years of age or over of an act which constitutes a crime under the laws of this State, the State's Attorney shall determine the court in which that minor is to be prosecuted; however, if the Juvenile Court Judge objects to the removal of a case from the jurisdiction of the Juvenile Court, the matter shall be referred to the chief judge of the circuit for decision and disposition."

The content of the statute gives no indication of specific standards to be used in determining "the court in which [the] minor is to be prosecuted," and leaves the initial decision in the hands of the State's Attorney. This statutory scheme, defendant argues, constitutes an unconstitutionally vague delegation of authority from the legislature to a member of the executive branch of government. The identical issue was raised and adjudicated in *People v. Handley*, 51 Ill.2d 229, 233, 282 N.E.2d 131, wherein the court stated:

> "Historically, the office of the State's Attorney has involved the exercise of a large measure of discretion in the many areas in which State's Attorneys must act in the performance of their duties in the administration of justice. We do not find it constitutionally objectionable that the legislature has seen fit to grant discretion to the State's Attorney in removal matters under the Juvenile Court Act, particularly in view of the fact that the purposes of the Act as set forth in section 1—2 of the Act (Ill. Rev. Stat. 1969, ch. 37, par. 701—2) and can be presumed to be considered by State's Attorneys in making determinations in these matters."

Accordingly, we reject defendant's contention. *People v. Sprinkle*, 4 Ill. App.3d 6, 280 N.E.2d 29; see also *People v. Bombacino*, 51 Ill.2d 17, 280 N.E.2d 697; *People v. Hawkins*, 53 Ill.2d 181, 290 N.E.2d 231.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

HAYES, P. J., and LEIGHTON, J., concur.

---

[3] Ill. Rev. Stat. 1969, ch. 37, par. 702—7(3).