**STATE of Utah, Plaintiff and Appellant,**

v.

**Eugene MYERS, Defendant and Respondent.**

**No. 16223.**

Supreme Court of Utah.

Jan. 24, 1980.

---

Robert B. Hansen, Atty. Gen., Craig L. Barlow, Asst. Atty. Gen., R. Paul VanDam, Salt Lake County Atty., Patricia Marlowe, Deputy County Atty., Salt Lake City, for plaintiff and appellant.

James N. Barber, Salt Lake City, for defendant and respondent.

CROCKETT, Chief Justice:

The defendant was convicted by a jury of the crime of rape.[1] After the return of the verdict, the district court entered an order in arrest of judgment. The state appeals.[2]

When there has been a trial by jury, the state, as well as the defendant, is entitled to the benefit of the findings and the verdict of the jury. The trial judge can intrude upon the prerogatives of the jury and substitute his judgment therefor only if he can so rule as a matter of law. In the face of the ruling made in this case, we are obliged to assume that wherever the evidence was in dispute, the jury believed those aspects of it which support their verdict.[3]

On the morning of May 18, 1978, the defendant approached the victim and another woman in the parking lot at the Utah Technical College and asked them if he could take them to breakfast at a nearby cafe, which was done. After the breakfast, the defendant offered to buy them drinks at a private liquor club, to which they proceeded, arriving there about 11:00 a. m. They remained there for about two hours when the victim left to change into her work clothes. She was a cocktail waitress at another club; and the costume into which she changed could be characterized as somewhat scanty.

The further details of what occurred during that afternoon and evening can be spared except those which we think have an essential bearing on the situation: after the victim returned her companion departed, leaving her and the defendant at the club. The victim stated that she only had one drink and that she did not become intoxicated. The club manager testified that during the evening he saw the victim and the defendant engaging in familiarities of petting and that he saw the victim lying with her head on the defendant's lap. When the club closed after midnight, the victim took the defendant in her car, intending to drive him to his own car. He asked her to take him to the parking lot of a motel where he wanted to see a friend. When they stopped there, the defendant began to explain to her that she could make more money working for him as a prostitute than she could as a waitress; and that if she would have intercourse with him, he would pay her. She refused; and in response to his questions as to her reasons,

1. Sec. 76–5–402, U.C.A., 1953.

2. Permitted by Sec. 77–39–4, U.C.A., 1953.

3. *State v. Peterson*, 110 Utah 413, 174 P.2d 843 (1946).

and mentioning the matter of friendship, she stated that she wanted to keep it on that level: friends and no more.

The defendant then became angry and called her names. When she attempted to escape, he grabbed her and at the car keys, breaking the chain, causing the keys to fall on the floor. When she again tried to get out, he grabbed her by the hair and dragged her back in. She says that she resisted, fought, and screamed, but he got her down, pinned her hands to the seat with his knees and accomplished an act of intercourse with her.

Witnesses who saw the victim shortly after the occurrence testified that she was crying, that her face and eyes were swollen, her skirt was ripped and the front of her blouse was torn open; that a large strip of her hair was missing from her head and that she had red marks on her arm. She was taken to a hospital and an examination confirmed recent intercourse; and patches of bruises and scratching were observed upon her body.

The defense was that the affair was consensual, for which the victim expected financial reward, and that it was because it was not paid that she complained.

After the presentation of all of the evidence, the judge submitted the case to the jury under instructions which told them that:

"You are the exclusive judges of the credibility of the witnesses and the weight of the evidence" and "of determining the guilt or innocence of the defendant."

We acknowledge that to be a commendably clear, succinct, and correct statement of the law, which is the controlling proposition in this case. The jurors appear to have thought so too and to have believed what the judge told them. But from his subsequent determination, the conclusion is inescapable, and regrettable, that the judge himself did not put as much credit in it as he should have done.

At the time set for sentencing, the judge gave an extended analysis of his view of the evidence. What it amounted to was that he

thought the victim had so behaved herself with the defendant that she had practically invited what had happened to her. It included these significant statements:

I cannot close my eyes to the fact situation that for this long period during that day these two people were in friendly contact association, necking with each other and participating in the kind of activity that ultimately might well lead to sexual relations . . .

and also

. . . if under those facts and circumstances a man has sexual intercourse with a woman, it seems to me, *even if it can technically be said without her consent,* I don't think that we can, in any sense of the word, justify imposing a prison sentence upon him on that fact situation. [Emphasis added.]

■ The view so expressed seems to suggest that if a woman is "friendly" in accepting the proffered hospitality of a man for food and drink, and engages in "necking," that is, kissing and hugging, and that this persists over a period of time, she loses her right to protest against further advances the man may desire to force upon her; and thereby subjects herself to such advances and should be deemed to consent to intercourse if he, but not she, so desires. Neither this Court nor the law will justify any such conclusion.

It is not to be questioned that the jury (and the trial judge) may well have regarded the conduct of the young woman as unseemly and indiscreet; but they appear to have thought that it did not justify the defendant's violence upon her. In such a situation of intimacy, involving the various nuances of consent or rejection, the question as to whether the victim should be deemed to have given her consent is a matter which would be peculiarly within the province of the jury to determine.

■ It is our conclusion that on the basis of substantial, believable evidence, the trial judge was correct both in his determination that the dispute in the evidence justified submitting the issue to the jury; and also

in his instruction that they were the exclusive judges of the credibility of the evidence. Accordingly, it is our judgment that the verdict should be reinstated and the case remanded for the imposition of such sentence as the court thinks is justified within the limits provided by statute.[4]

HALL and STEWART, JJ., concur.

WILKINS, Justice (concurring in reversal):

I concur that the District Court's order in arrest of judgment must be reversed. But, I think it should be noted that a court has the right, and indeed should exercise the duty, to arrest a judgment after a jury verdict in an appropriate case pursuant to Utah Code Ann., Sec. 77–34–1, as amended. In this particular case, however, the evidence does not permit such judicial action.

When the District Court here stated: ". . . the jury verdict in this case left much to be desired from a point of view of justice under the facts and circumstances of this case," it was essentially grounding its reasons for arresting the judgment in a belief that the evidence was insufficient to establish that the defendant had committed a public offense.

An appellate court, or a trial court, is not permitted in a civil or criminal action to substitute its judgment for the jury's unless the verdict is based on evidence that is so inherently improbable that no reasonable mind could believe it[1] (and in a criminal case a "not guilty" verdict cannot be overturned whether a reasonable mind could believe it or not).

In short, the legal mechanism of arresting a judgment is a firmly entrenched exception to the rule of law *in a proper case* that jurors are the exclusive judges of the credibility of the witnesses and the weight of the evidence. And it should be noted that the District Court here acted in what it perceived to be an authorized manner pursuant to that mechanism. We have, however, concluded after reviewing the evidence that the Court's action was not warranted under the facts of this case.

MAUGHAN, Justice, concurs in the views expressed in the concurring opinion of WILKINS, J.

---

4. We do not desire to have this decision understood as indicating that, in a proper case, the trial judge cannot grant a motion in arrest of judgment, as provided in Section 77–34–1, U.C. A.1953.

1. *State v. Harless*, 23 Utah 2d 128, 459 P.2d 210 (1969). See also *State v. Ward*, 10 Utah 2d 34, 347 P.2d 865 (1959); *State v. Middelstadt*, Utah, 579 P.2d 908 (1978); *State v. Wilson*, Utah, 565 P.2d 66 (1977).