STATE of Utah, Plaintiff and
Respondent,

v.

Ronald Ray HERZOG, Defendant
and Appellant.

No. 16441.

Supreme Court of Utah.

April 10, 1980.

D. Gilbert Athay, Salt Lake City, for
defendant and appellant.

Robert B. Hansen, Atty. Gen., Robert R. Wallace, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

HALL, Justice:

Defendant appeals his conviction of the offense of rape.[1] His sole contention on appeal is that the evidence was insufficient to support the jury verdict.

Shortly after midnight on the morning of November 1, 1978, prosecutrix in the present action, accompanied by her husband, arrived at a lounge in Salt Lake County. Apparently due to a dispute, the husband departed without her. After some twenty minutes in the lounge, prosecutrix began walking toward her home. She walked past defendant, who was seated in a pickup truck located in a parking lot. Defendant rolled down the window and offered to give the prosecutrix a ride, and she accepted.

Before the two had proceeded far, the prosecutrix requested that defendant stop somewhere for the purpose of purchasing beer. He did so, and the prosecutrix entered the store alone and returned to the truck with a six-pack.

Sometime before or after the purchase of beer, defendant asked if the prosecutrix would like to smoke a "joint," and suggested they go to her home. Prosecutrix acknowledged her willingness to do so, but stated that, due to the dispute with her husband, they should go somewhere else.

At defendant's election, the two proceeded to the mouth of Parley's Canyon. Defendant exited the freeway and drove to a flat "overlook" area above the freeway. The area was dark and there were no houses or other structures in the vicinity. Both defendant and prosecutrix testified that traffic on the freeway below was very light due to the lateness of the hour. Another car was present when the two arrived, but left shortly thereafter.

Defendant parked, and the two shared a marijuana cigarette. Each also consumed one can of beer. Defendant then suggested that they have sex, but the prosecutrix declined, pointing out that she was married. Defendant then took her purse, which was on the seat between them. The prosecutrix told him to keep it, and attempted to exit the vehicle. Defendant thereupon seized her blouse and detained her, saying "Don't make me violent," and "Don't make me force you," and assuring her that if she cooperated she would not be hurt. There is evidence that the prosecutrix then tried to dissuade defendant, asking that he take her home. Defendant refused. The prosecutrix then got out of the truck and partially disrobed. There is evidence that defendant also got out of the truck at that time. Defendant also partially disrobed, and the two got back into the truck. Defendant, unable to achieve erection, ordered the prosecutrix to "make me hard," which she did by means of manual stimulation. The two then had intercourse.

Thereafter, defendant drove to a location some one and one-half blocks from her home. On the way, defendant said, "I'm sorry I forced you," and asked her not to report the incident. Upon letting her off, defendant shut off his headlights, admittedly to keep the prosecutrix from learning his license number. Nevertheless, she managed to observe the number.

Prosecutrix' husband returned home that afternoon and she advised him of the incident. Thereupon, prosecutrix was taken to St. Mark's Hospital for examination.

Defendant was subsequently arrested. At his jury trial, defendant was found guilty of rape, in that he had had sexual intercourse with a person, not his spouse, without that person's consent.[2]

Defendant asserts that the evidence below failed to establish that the act complained of took place without the consent of the prosecutrix. Under Utah law, an act of sexual intercourse or sexual abuse takes place without the consent of the victim,

---

1. In violation of U.C.A., 1953, 76–5–402.

2. Id.

. . . under any of the following circumstances:

(1) When the actor compels the victim to submit or participate by force that overcomes such earnest resistance as might reasonably be expected under the circumstances; or

(2) The actor compels the victim to submit or participate by any threat that would prevent resistance by a person of ordinary resolution . . . .[3]

The determination of whether, given the above legal standard, consent was present or absent in any given case is factual in nature, and is thus a matter for determination by the finder of fact.[4] This Court will hence not overturn any determination in that regard unless there appears of record such evidence that reasonable minds could not agree with the verdict reached.[5]

Defendant essentially argues that, as the prosecutrix went with defendant voluntarily, initially refused his advances, but thereafter gave no resistance, failed to make any outcry or attempt to escape, and even assisted defendant in completing intercourse, it was established as a matter of law that the act was consensual. We disagree.

■ Evidence presented in a rape prosecution is often scrutinized with great care by a reviewing court where consent is asserted, in light of the ease of the charge and the difficulty in proving the defense.[6] The intent of such a procedure is the protection of one who engages in intimate relations with another under the impression that all is proceeding by mutual consent, only to be faced later by a claim of rape. As will be seen, the present case suggests no such situation.

■ The fact that the prosecutrix accepted a ride from defendant, accompanied him to a store where she bought beer for the two of them, and even agreed to ride into the canyon with him, is not legally determinative of the question of consent. One does not surrender the right to refuse sexual intimacy by the act of accepting another's company, or even by encouraging and accepting romantic overtures.[7]

■ Similarly defective is the defendant's assertion that consent is mandated by the fact that he was not constrained to use force, as prosecutrix neither resisted nor attempted escape or outcry. The governing statute is specifically worded in the disjunctive—physical force, or threats thereof will vitiate consent.[8] It has long been recognized in this, as in other jurisdictions, that the threat of force, without more, may instill such fear in the victim that resistance is forestalled, but that such is not tantamount to consent.[9] In the present case, the prosecutrix was held in the truck against her will and expressly threatened with violence, unless she would submit. The hour was late, the location dark and isolated, the only source of assistance being the thin traffic flow of an interstate freeway at the foot of a nearby incline. The law calls upon the trial court to gauge such facts by an objective standard: was the threat, under the circumstances, such that a person of ordinary resolution in the prosecutrix' position would fear to resist? Given the evidence, and without the opportunity to observe the witnesses or hear the testimony, we cannot say that, as a matter of law, the verdict was incorrect. The law does not require an individual, in the face of an open and apparently genuine threat of violence, to engage in detached reflection regarding the

3. U.C.A., 1953, 76–5–406.

4. *State v. Myers*, Utah, 606 P.2d 250 (1980).

5. *State v. Allgood*, 28 Utah 2d 119, 499 P.2d 269 (1972); *State v. Mills*, Utah, 530 P.2d 1272 (1975); *State v. Romero*, Utah, 554 P.2d 216 (1976).

6. *State v. Horne*, 12 Utah 2d 162, 364 P.2d 109 (1961).

7. *State v. Myers*, supra, footnote 4.

8. U.C.A., 1953, 76–5–406(1) and (2).

9. *State v. Reddish*, Utah, 550 P.2d 728 (1976); see also *State v. Reinhold*, 123 Ariz. 50, 597 P.2d 532 (1979); *Brown v. State*, Wyo., 581 P.2d 189 (1978).

sincerity with which it was made, or the likelihood that it will be carried out. This is so whether or not the defendant makes open display of a deadly weapon,[10] and whether or not the victim makes outcry when such would be futile, there being no one within shouting distance.[11]

■ Defendant finally asserts that the fact that the prosecutrix assisted him in achieving erection legally establishes that he was acting with her consent. The suggestion presupposes that, while a person may be threatened into passive submission without consenting, active participation, no matter how obtained, somehow creates a legal consent. The statute specifically states otherwise—consent is vitiated when the victim is constrained to submit *or participate* by threat. Participation per se is irrelevant; [12] only when it indicates consent under the objective standard set forth by law does it bar conviction. Again the jury found consent lacking, and again, we are unable to say that, under the circumstances, a contrary verdict was mandated by law.

At no point during the night of November 1, 1978, did defendant believe that the prosecutrix was openly consenting to sexual relations with him; both before and after, he made reference to forcing her. He even attempted to escape detection by turning out his car lights upon leaving her. Such being the case, a ruling that, as a matter of law, the act was consensual, is clearly not mandated.

The verdict and judgment is affirmed.

WILKINS and STEWART, JJ., concur.

CROCKETT, Chief Justice (dissenting):

The prosecution correctly asserts, as we have many times acknowledged, that the jury and the trial court are entitled to a wide latitude of discretion in the finding of facts and the determination of guilt. However, this does not mean that they are infallible, nor that they have the uncontrolled privilege of making findings wherever passion or prejudice or whim or caprice may lead them. This Court has some responsibility of review even on questions of fact; and when it appears that upon surveying the evidence in the light most favorable to the prosecution, there is no reasonable basis therein which would justify reasonable minds in finding the defendant guilty, it is our duty to reverse such a conviction.[1]

I appreciate that the victim is not required to endure nor to risk any severe physical harm. But the essence of the offense of rape is force or fear which overcomes the resistance of the victim. This includes both the will to resist and actual resistance, as contrasted to consent or cooperation. As our statute, Sec. 76–5–406 states: the force must be that which "overcomes such earnest resistance as might reasonably be expected under the circumstances;" or a threat of violence that "would prevent resistance by a person of ordinary resolution."

It is noteworthy here that there was no weapon such as a knife or a gun, nor any substantial physical violence or injury. When the victim had left the truck and was thus out of the control of the defendant, she had ample opportunity to escape or to elude and avoid further contact. But instead of doing so, she "partially undressed" and voluntarily got back into the truck; and quite the contrary to resistance, she chose to actively cooperate and participate in the actions which are charged as a violent invasion of her person.

An observation which seems pertinent here is that this whole affair of drinking, smoking marijuana and engaging in illicit sex was so repugnant to the sensibilities of decent law-abiding citizens that their judg-

---

**10.** See *People v. Murphy*, 124 Ill.App.2d 71, 260 N.E.2d 386 (1970).

**11.** See *In re Johnson*, 445 Pa. 270, 284 A.2d 780 (1971); *People v. Montgomery*, 19 Ill.App.3d 206, 311 N.E.2d 361 (1974).

**12.** See *Curtis v. State*, 236 Ga. 362, 223 S.E.2d 721 (1976); *People v. Jones*, 28 Ill.App.3d 896, 329 N.E.2d 855 (1975).

**1.** As to the crime of rape see *State v. Williams*, 111 Utah 379, 180 P.2d 551 (1947); *State v. Mortensen*, 95 Utah 541, 83 P.2d 261 (1938).

ments may have been distorted into thinking "a plague on both their houses." Indeed as to other crimes, the victim could himself have been charged, either as a principal, or as an accomplice, as one who aids in the commission of a crime, and there would have been no less doubt about her guilt than there is about the guilt of the defendant. But inasmuch as it was the defendant who was charged with rape, they convicted him of that crime. We should keep in mind that the question is not whether other offenses were committed, but whether there was a basis upon which to find that the crime of forcible rape was committed.

Based upon what has been said above, I am impelled to the conclusion that taking the evidence even in the light most favorable to the prosecution, there is no reasonable basis therein whereby reasonable minds acting fairly thereon should believe beyond a reasonable doubt that this was a crime of forcible rape. Therefore, I think the conviction should be reversed.[2]

MAUGHAN, J., concurs in the dissenting opinion of CROCKETT, C. J.

---

2. On this same principle this Court in a unanimous decision reversed a conviction of rape in the case of State v. Horne, 12 Utah 2d 162, 364 P.2d 109 (1961).