**STATE of Utah, Plaintiff and Respondent,**

v.

**Charles Alvin KENNEDY, Defendant and Appellant.**

**No. 16854.**

Supreme Court of Utah.

Aug. 8, 1980.

5. Footnote 1, main opinion.

Pat Bernell Brian and Robert F. Babcock of McMurray & Anderson, Salt Lake City, for defendant and appellant.

Robert B. Hansen, Atty. Gen., and Craig L. Barlow, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

HALL, Justice:

Defendant Charles Alvin Kennedy appeals from a conviction of forcible sexual abuse.[1]

The evidence produced at trial supports the following factual outline. Defendant, a resident of Nephi, Juab County, Utah, married the prosecutrix, Toni Kennedy, in 1977. Following their marriage, the couple moved to Virginia for a time, but returned to Nephi to live in late 1978.

During the course of the marriage, defendant constrained the prosecutrix to have sexual intercourse with other men on several occasions. The prosecutrix' cooperation was procured by a continuous routine of abuse on defendant's part. Prosecutrix would repeatedly be subjected to sessions of criticism and ridicule, often several hours in duration, during which she would be forcibly restrained from leaving the room. These "arguments," although dealing with numerous aspects of the couple's marriage, generally led, ultimately, to defendant's demands that the prosecutrix have sex with other men. Attempts by the prosecutrix to leave the home were met with threats, express and implied, of violence to prosecutrix herself, and to her father (also a resident of Nephi) should he attempt to assist her or otherwise interfere. Defendant also threatened to keep the couple's infant daughter from the prosecutrix in the event that she tried to leave home. At one point, when prosecutrix was attempting to leave the house against defendant's wishes, he made an attempt to run her down with a truck. Such treatment elicited at least one instance of attempted retaliation by the prosecutrix, and also a suicide attempt.

On August 4, 1979, defendant brought into the home an individual referred to as "B.J.," who had agreed to assist defendant in installing a new engine in the couple's truck. Following the first day's work on the truck, defendant told the prosecutrix that "B.J." had agreed to help him in exchange for an opportunity to have intercourse with her. Prosecutrix objected, but was told that she "had to" in order to get the truck fixed. After again objecting, and again being told that she had to, prosecutrix had intercourse with "B.J." while defendant concealed himself in the bedroom closet and made a tape recording of the incident. "B.J." remained at the couple's home for three more nights, on all but one of which he had sexual intercourse with the prosecutrix. During at least one such instance, defendant was present in the room observing, and himself had sex with prosecutrix immediately after, with "B.J." present and observing.

On August 22, 1979, an individual identified simply as Rick appeared at the couple's home. Defendant took Rick to a fast-food restaurant in the neighborhood, and then returned to the house with him. Despite the prosecutrix' objections, defendant demanded that she "go to bed" with Rick. As she "didn't know what else to do," prosecutrix again complied, and defendant again recorded the incident from the closet.

On August 24, 1979, prosecutrix filed a criminal complaint against defendant. On the basis thereof, defendant was charged by information with two counts of forcible sexual abuse. Following trial to the court sitting without a jury, defendant was found guilty on both counts, and, following the receipt of the presentence report, was sentenced on December 21, 1979, to two terms of five years at the State Penitentiary, the sentences to run concurrently. We concur in the trial court's actions, and affirm the conviction.

Defendant first alleges that the conviction is invalid, in that the statutory provision on which the conviction rests is unconstitutionally vague. The applicable provision states that:

A person commits forcible sexual abuse if, . . . he touches the anus or any part of the genitals of another, or otherwise takes indecent liberties with another, . . . with intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or

1. In violation of U.C.A., 1953, 76–5–404.

gratify the sexual desire of any person, without the consent of the other.[2]

It is particularly defendant's assertion that the phrase "or otherwise takes indecent liberties," as used in the statute, is so vague that a person of ordinary intelligence is left without an indication regarding what is permitted, and what prohibited, thereby.

■ A defendant may validly raise as a defense the fact that a statutory provision is so vague and uncertain in its terms that he had no way of knowing that the particular act or omission forming the basis of the criminal charge was proscribed thereby. Enforcement of such a provision violates the defendant's rights of due process.[3]

■ This Court recently held[4] that the term "or otherwise takes indecent liberties," as used in the provision in question, invokes the doctrine of ejusdem generis, and refers to acts of equal magnitude of gravity to those specifically set forth in the statute (i. e., the touching of the anus, genitals, etc., of another). Viewing defendant's conduct in light of this construction, we are unable to say that the language in question leaves a reasonable person to guess whether or not such conduct is thereby forbidden. The forcing of one's wife to engage in sexual intercourse with others clearly rises to the magnitude of gravity of the acts enumerated in the statute.

■ It is noteworthy, moreover, that defendant, notwithstanding his marital relationship with the prosecutrix, could have been convicted of the crime of rape on the same facts supporting the conviction of forcible sexual abuse.[5] If, therefore, the defendant's acts constitute rape, he clearly was on notice that his conduct did not conform to the demands of the law, regardless of the clarity of the provision dealing with forcible sexual abuse. He cannot be said to have been in reasonable doubt regarding the legality of his acts simply because a statute with which he was not charged more clearly proscribed them than did that with which he was charged.

Defendant next asserts that the state failed to show, by the evidence, all of the elements of the offense with which it charged him. In particular, defendant claims that the state failed (1) to demonstrate lack of consent on the part of the prosecutrix, and (2) to show that defendant acted with the requisite intent.

Under Utah law,[6] an act of sexual abuse occurs without the victim's consent,

(1) When the actor compels the victim to submit or participate by force that overcomes such earnest resistance as might reasonably be expected under the circumstances; or

(2) The actor compels the victim to submit or participate by any threat that would prevent resistance by a person of ordinary resolution; . . . .

defendant points out that neither of the events forming the substance of the charges facing him were accompanied by overt violence, or by any clear and immediate threat thereof, as by show of weapons, etc. Therefore, reasons defendant, consent was not shown to be lacking under the statute.

■■ The law is clear in this state that outright violence is not a necessary element of a crime requiring lack of consent, nor is

2. U.C.A., 1953, 76–5–404.

3. *United States v. Harriss*, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954); *Wright v. Georgia*, 373 U.S. 284, 83 S.Ct. 1240, 10 L.Ed.2d 349 (1963); *Logan City v. Carlsen*, Utah, 585 P.2d 449 (1978); *Parker v. Rampton*, 28 Utah 2d 36, 497 P.2d 848 (1972).

4. *State In the Interest of J. L. S.*, Utah, 610 P.2d 1294 (1980).

5. U.C.A., 1953, 76–5–402, states that "A male person commits rape when he has sexual intercourse with a female, not his wife, without her consent." It is also provided, however, at 76–2–202, that a person who, acting with the mental state required for the offense, either commits the offense personally, or solicits, requests, commands, encourages, or intentionally aids its commission by another, is criminally liable for such conduct. In addition, 76–2–203(1) provides that the above holds true notwithstanding the fact that the defendant would be legally incapable of committing the crime personally.

6. U.C.A., 1953, 76–5–406.

the display of a weapon or other extreme tactic.[7] The statutory language requires, without more, such threat (of whatever character) as will overcome the resistance of a person of ordinary resolution. We hold that the trial court was well-justified in finding that the experience of the prosecutrix at defendant's hands met such a standard. The evidence shows a process of systematic harassment, intimidation and abuse which included threats of violence to prosecutrix and to her father, threats of separation from the child of the marriage, threats of blackmail, etc. On at least one occasion, defendant made an attempt on the life of the prosecutrix. This psychological abuse, stretching, according to the prosecutrix, over the entire course of the marriage, would be far more effective in eroding the resolve of an ordinary person than would a single threat of violence immediately preceding the act itself. Under such circumstances, it would be unrealistic to regard the prosecutrix' failure actively to resist as evidence of consent. Defendant cannot turn force into consent by simply separating the threats and the act chronologically.

Defendant's claim that the state's evidence failed to show the requisite intent under the statute is similarly defective. The language of the statute[8] requires the defendant to engage in the prohibited behavior with the intention of gratifying or arousing the sexual desire of any person. Defendant urges that the state made no showing that he constrained his wife to have sexual intercourse with the individuals in question for the purpose of gratifying his own desires.

Wherever a special intent is an element of a criminal offense, its proof must rely on inference from surrounding circumstances.[9] The state, in the instant case, produced evidence that defendant recorded, and sometimes witnessed, the acts of intercourse forced on his wife. Prosecutrix testified, moreover, that defendant ha-

bitually took the recordings so made into a tool shop adjoining the house, and played them "over and over again." The inference is clearly possible (if not inescapable) that defendant's actions were prompted by sexual gratification.

The statute, in addition, requires only that defendant act with the intent to arouse or gratify the sexual desires of *any person*, not strictly his own. It cannot be logically disputed that defendant was acting with the intent to gratify the desires of the men whom he brought home to his wife.

The decision of the trial court is affirmed.

CROCKETT, C. J., and MAUGHAN and WILKINS, JJ., concur.

STEWART, J., concurs in result.

---

**7.** *State v. Herzog*, Utah, 610 P.2d 1281 (1980); *State v. Myers*, Utah, 606 P.2d 250 (1980).

**8.** See footnote 2, supra.

**9.** *State v. Romero*, Utah, 554 P.2d 216 (1976); *State v. Kazda*, 15 Utah 2d 313, 392 P.2d 486 (1964).