STATE of Utah, Plaintiff and Appellant,

v.

D. John MUSSELMAN, Defendant
and Respondent.

No. 17380.

Supreme Court of Utah.

June 21, 1983.

David L. Wilkinson, Atty. Gen., Robert R. Wallace, Craig L. Barlow, Asst. Attys. Gen., Salt Lake City, for plaintiff and appellant.

Phil L. Hansen, Salt Lake City, for defendant and respondent.

STEWART, Justice:

Defendant was charged with (1) forgery pursuant to U.C.A., 1953, § 76–6–501(1)(b), and (2) theft pursuant to § 76–6–404 and § 76–6–412, or alternatively, theft by deception pursuant to § 76–6–405 and § 76–6–412. At the conclusion of the State's case in chief, defendant moved to dismiss both counts. The trial court found the defendant innocent of the theft charges on the ground that the State had failed to prove the requisite criminal intent, and denied the motion to dismiss the forgery count. The defense then presented its case. At the close of all evidence, the trial court ruled that the motion to dismiss the forgery count made at the close of the State's case was granted nunc pro tunc as a matter of law on the ground that an attorney does not commit a crime by signing his client's name to a settlement check.

The State appeals both dismissals and seeks a new trial on both counts. Defendant responds that the appeals should be dismissed because a retrial is barred by the double jeopardy clauses of the State and Federal constitutions and asserts that an opinion on the merits would be advisory only.

In 1976 defendant, an attorney, filed a lawsuit on behalf of his client, Val Conlin. In the summer of 1978, defendant informed Conlin that a settlement offer had been made and showed Conlin a settlement check for $3,500.00 made payable to both Conlin and defendant. Conlin rejected the check because the settlement amount was not enough and he wanted his day in court. Nevertheless, the defendant retained the settlement check, and in September 1978 signed Conlin's and his own name on the check as endorsements and deposited the check in his trust account. Defendant also signed Conlin's signature on a stipulation, a motion, an order of dismissal with prejudice, and on a release of all claims.[1] By the end of September, defendant's trust account balance had fallen to $129.14, and nothing had been paid out to Conlin.

Sometime the following year, Conlin asked the defendant about the status of the lawsuit, and the defendant informed Conlin that the action had been dismissed. Thereafter, Conlin employed other counsel to determine why his suit had been dismissed. As a result, defendant's activities came to light.

---

1. The State's forgery charge is based only on defendant's endorsement of the settlement check, not on his signing of the other settlement documents.

The theft by deception and theft charges were brought in the alternative because the State was uncertain whether the $3,500.00 held by defendant belonged to Conlin, who had refused the check, or to the opposing party's insurer, which had issued the check. Conlin disclaimed any right to the money apparently because he did not want to ratify the unauthorized settlement, and the insurer disclaimed any right to the money, apparently because it wanted to enforce the settlement agreement. Presumably, theft by deception was the proper charge if the money belonged to the insurer, and theft was the proper charge if the money belonged to Conlin.

The charges were tried to the court sitting without a jury. The court dismissed both theft charges on the finding that there was insufficient evidence that defendant had the requisite intent to deprive the owner of the money. The trial court also dismissed the forgery charge as a matter of law at the close of all evidence on the ground that an attorney cannot be guilty of forgery in signing his client's name to documents relating to his client's lawsuit. The trial court stated that "given the existence of either implied or statutory authority of some kind to execute a document in the name of one's client, an attorney at law cannot commit a forgery within the meaning of the statutes of the State of Utah in so executing his client's name on the document." The court found that defendant had such authority as a matter of law.

The first issue is whether the State may appeal the trial court's rulings disposing of the theft and forgery charges. U.C.A., 1953, § 77–35–26(c) sets forth the limited circumstances in which the State may appeal in a criminal case:

(c) An appeal may be taken by the prosecution:

(1) From a final judgment of dismissal;

(2) From an order arresting judgment;

(3) From an order terminating the prosecution because of a finding of double jeopardy or denial of a speedy trial;

(4) From a judgment of the court holding a statute or any part thereof invalid; or

(5) From an order of the court granting a pre-trial motion to suppress evidence when, upon a petition for review, the supreme court decides that such an appeal would be in the interest of justice.

The State argues that the trial court's adverse ruling on the theft charges was erroneous as a matter of law and should be reversed because reasonable minds could only conclude that there was overwhelming proof of all the elements of the theft charges. The critical issue in resolving this contention is whether the trial court's action constituted an acquittal. Section 77–35–26(c) does not authorize the State to appeal an acquittal, no matter how overwhelming the evidence against the defendant may be.

██ The label attached to a ruling by a trial judge is not determinative of whether the termination of a criminal prosecution is an acquittal. *United States v. Scott,* 437 U.S. 82, 96–97, 98 S.Ct. 2187, 2196–2197, 57 L.Ed.2d 65 (1980); *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 571, 97 S.Ct. 1349, 1354, 51 L.Ed.2d 642 (1977). A ruling that constitutes a factual resolution in favor of the defendant on one or more of the elements of the offense charged is an acquittal. *United States v. Scott, supra* 437 U.S. at 97, 98 S.Ct. at 2197; *United States v. Martin Linen Supply Co., supra* 430 U.S. at 571, 97 S.Ct. at 1354.

██ In the instant case, the trial court "dismissed" the theft charges because of its determination that there was inadequate proof of the requisite intent to commit the crimes charged. Although the ruling was labeled a "dismissal" by the trial court, it was clearly based on the trial court's assessment of the evidence and is an acquittal and not a "dismissal" as that term is used in § 77–35–26(c). *See United States v. Scott, supra; United States v. Martin Linen Supply Co., supra.* The State's appeal of the theft counts must, therefore, be dismissed because an acquittal is not appealable. *Cf.*

*State v. Davenport,* 30 Utah 2d 298, 517 P.2d 544 (1973); *State v. Overson,* 26 Utah 2d 313, 489 P.2d 110 (1971).

An appellate court, on principles deeply rooted in the double jeopardy clauses of the Utah and Federal constitutions, and by the very nature of the judicial process itself, may not reassess an acquittal even though the acquittal was made under an incorrect application of the law or an improper determination of the facts. *United States v. Martin Linen Supply Co., supra.* Once a criminal charge has resulted in an acquittal by the trier of fact, the prohibition against double jeopardy prevents that determination from ever again being challenged. It is of no consequence that the determination was made as a matter of law by a directed verdict of acquittal,[2] or as a matter of fact by the trier of fact. *See, e.g., Tibbs v. Florida,* 457 U.S. 31, 41, 102 S.Ct. 2211, 2218, 72 L.Ed.2d ·652 (1982); *United States v. Martin Linen Supply Co., supra; United States v. Ball,* 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896).[3] Furthermore, for an appellate court to render an opinion on appeal from an acquittal would be to render an advisory opinion, which is beyond our power. *See State v. Overson, supra.*

In contrast to the dismissal of the theft charge, the trial court dismissed the forgery charge, on the motion of the defendant, on the ground that the defendant had authority, *as a matter of law,* by virtue of his office as an attorney to sign Conlin's name to the settlement check. Thus, the dismissal of the forgery charge was based on the trial court's construction of the applicable law *before* the court ruled on the sufficiency of the evidence to convict. The ruling was, in effect, a "final judgment of dismissal" under § 77–35–26(c)(1), and therefore appealable even though the ruling was made at the close of all the evidence.

Nevertheless, even if there is statutory authorization for the State to appeal the dismissal of the forgery count, it does not necessarily follow that we may consider the merits of the appeal. An appellate court may not address the merits of a criminal appeal if a reversal would require a retrial that would be barred by the double jeopardy clause. *See, e.g., United States v. Martin Linen Supply Co., supra.*

Jeopardy attaches in a judge-tried case when the first witness is sworn and the court begins to take evidence. *Crist v. Bretz,* 437 U.S. 28, 37 n. 15, 98 S.Ct. 2156, 2162 n. 15, 57 L.Ed.2d 24 (1978); *Lee v. United States,* 432 U.S. 23, 28 n. 3, 97 S.Ct. 2141, 2144 n. 3, 53 L.Ed.2d 80 (1977); *Serfass v. United States,* 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975). *See Boyer v. Larson,* 20 Utah 2d 121, 433 P.2d 1015 (1967). Since testimony was taken in the instant case, jeopardy attached. It is not, however, necessarily true that a retrial is barred by the double jeopardy clause in all cases once jeopardy has attached. When a defendant's motion for a mistrial is granted, the jury is unable to reach a verdict, or a conviction is reversed on appeal for errors of law in the trial of the case, a defendant may be retried notwithstanding the double jeopardy clause. *E.g., Lee v. United States,* 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977); *State v. Jaramillo,* 25 Utah 2d 328, 481 P.2d 394 (1971); *State v. Gardner,* 62 Utah 62, 217 P. 976 (1923). *See United States v. Scott, supra.*

**2.** If a jury verdict of guilty is set aside by an order of a trial judge pursuant to a motion in arrest of judgment, however, that order may be appealed pursuant to § 77–35–26(c)(2), and if reversed, the guilty verdict reinstated. *State v. Myers,* Utah, 606 P.2d 250 (1980) (decided under predecessor statute, U.C.A., 1953, § 77–39–4).

**3.** However, if a verdict of guilty is set aside either by the trial court or on appeal for insufficiency of the evidence, a defendant may not be retried. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Green v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978); *McNair v. Hayward,* Utah, 666 P.2d 321 (1983); *State v. Murphy,* Utah, 617 P.2d 399 (1980); *State v. Abel,* Utah, 600 P.2d 994 (1979). *Compare State v. Lamorie,* Utah, 610 P.2d 342, 347 (1980) (concurring opinion of Stewart, J.).

Defendant relies on *United States v. Jenkins,* 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975), for the proposition that he may not be retried on the forgery charge.[4] *Jenkins* held that where it is not clear whether the trial court's ruling dismissing an indictment was based on a factual determination of guilt or innocence, or on a ruling as to a controlling question of law, a retrial was barred by the double jeopardy clause if a reversal and remand would require further proceedings to adjudicate the factual elements of the offense charged.[5]

That rule, however, was overruled in *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978). *Scott* held that where a *defendant* "seeks to terminate the trial before a verdict on grounds unrelated to factual guilt or innocence," *id.* at 87, 98 S.Ct. at 2191, the double jeopardy clause does not bar retrial.[6]

As in *Scott,* the basis for the dismissal in this case was unrelated to factual guilt or innocence. The dismissal was tantamount to a ruling that the crime charged in the information was not a crime under the law. What is critical in this case is that the trial court's ruling on the forgery charge was not based on any factual determinations related to the forgery charge.

 Indeed, defendant's motion to dismiss could, and undoubtedly should, have been made before the trial commenced, although the court had the power to consider the contention at any time. § 77–35–12(c) (Rule 12(c), Utah R.Crim.P.).[7] But the delay neither prohibited the defendant from making the motion, nor the State from treating it as a motion to dismiss for purposes of appealability under § 77–35–26(c). Nor can defendant's delay, as such, determine the double jeopardy issue. To allow a defendant to make a motion to dismiss solely on legal grounds after the trial commences, instead of prior to trial, and then claim double jeopardy if the motion is successful in the trial court but reversed on appeal, would permit a defendant to manipulate motion practice so as to avoid having to face a valid charge. The basic interest that the public has in having its laws enforced may not be so easily circumvented.

 Because defendant procured a dismissal of the forgery charge as a matter of law, on an issue of law, the case may be retried under the rule laid down in *Scott* without violating defendant's right to be free from twice being placed in jeopardy, if the trial court's view of the applicable law was incorrect.

The crime of forgery is defined in § 76–6–501(1)(b):

(1) A person is guilty of forgery if, with purpose to defraud anyone, or with

---

**4.** Defendant also relies on *State v. Overson,* 26 Utah 2d 313, 489 P.2d 110 (1971), which is not on point. There we held that the statute in effect did not authorize an appeal and therefore did not reach the double jeopardy issue.

**5.** The Court in *Jenkins* stated:

[I]t is enough for purposes of the Double Jeopardy Clause ... that further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged, would have been required upon reversal and remand. Even if the District Court were to receive no additional evidence, it would still be necessary for it to make supplemental findings.

420 U.S. at 370, 95 S.Ct. at 1013.

**6.** The Court stated:

We think that in a case such as this the defendant, by deliberately choosing to seek termination of the proceedings against him on a basis unrelated to factual guilt or inno-

cence of the offense of which he is accused, suffers no injury cognizable under the Double Jeopardy Clause if the Government is permitted to appeal from such a ruling ... in favor of the defendant.

437 U.S. at 98–99, 98 S.Ct. at 2198.

**7.** We recognize the information was not defective on its face. The charge of forgery against the defendant was a valid charge as stated; however, the defendant's position, which was accepted by the trial court, is that an attorney has authority *as a matter of law* to sign his client's name to a negotiable instrument without violating the forgery statute. The fact that he is an attorney has nothing whatsoever to do with establishing the necessary elements of the crime and therefore could have been admitted prior to trial without any relinquishment of his right not to incriminate himself. Nor would defendant have suffered any other prejudice by admitting what was uncontested, i.e., that he is an attorney.

knowledge that he is facilitating a fraud to be perpetrated by anyone, he:

. . . .

(b) Makes, completes, executes, authenticates, issues, transfers, publishes, or utters any writing so that the writing or the making, completion, execution, authentication, issuance, transference, publication or utterance purports to be the act of another, whether the person is existent or nonexistent, or purports to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed.

The defendant argues that § 78–51–32, which authorizes an attorney to execute documents in the name of a client, precluded defendant's conviction for forgery as a matter of law. Section 78–51–32 states:

An attorney and counselor has authority:

(1) To execute in the name of his client a bond or other written instrument necessary and proper for the prosecution of an action or proceeding about to be or already commenced, or for the prosecution or defense of any right growing out of an action, proceeding or final judgment rendered therein.

(2) To bind his client in any of the steps of an action or proceeding by his agreement filed with the clerk or entered upon the minutes of the court, and not otherwise.

(3) To receive money claimed by his client in an action or proceeding during the pendency thereof or after judgment, unless a revocation of his authority is filed, and, upon payment thereof and not otherwise, to discharge the claim or acknowledge satisfaction of the judgment.

■■ Subparagraph (3) confers broad authority on an attorney to "receive money claimed by his client" and the "power to discharge the claim" unless "a revocation of his authority is filed." However, we do not construe this provision so broadly as to justify an attorney in forging the name of his client to a negotiable instrument. Were we to do so, we would reverse the established relationship between attorneys and clients. Attorneys could exercise what traditionally and rightfully is a client's prerogative to decide to dismiss a cause of action; they could also, of course, endorse a client's name on checks received by the attorney without the client ever knowing either that an action had been dismissed or that payment had been made for the client's benefit. We do not think that § 78–51–32 was intended to reverse the universally accepted relationship between attorneys and clients in such matters. The statute goes no further than to allow an attorney to receive the full amount of money claimed by the client and to discharge the claim upon payment in full. That was not the situation in this case. Not only was the settlement for less than the full amount, but, even more important, was also in direct contravention of the client's directions, as was the defendant's signing of his client's name to the settlement check.

■■■ Section 78–51–32 does, of course, authorize an attorney to sign such documents as pleadings on behalf of a client. Without that authority, an attorney would be severely hampered in conducting litigation by having to maintain constant contact with his client for approval of even the most routine matters.[8] Where an attorney acts pursuant to this general authority

8. The attorney's authority in the settlement of a lawsuit is not akin to the usual duties of managing the various technical details of a lawsuit, such as the filing of various motions and the like. The handling of tactics is generally the responsibility of the attorney, but the decision to voluntarily terminate a lawsuit and on what terms, is for the client. It is, after all, the client's lawsuit, and it is the client who must make the final decision. As stated in the ABA Model Code of Professional Responsibility EC 7–7 (1981):

In certain areas of legal representation not affecting the merits of the cause or substantially prejudicing the rights of a client, a lawyer is entitled to make decisions on his own. But otherwise the authority to make decisions is exclusively that of the client and, if made within the framework of the law, such decisions are binding on his lawyer. As typical examples in civil cases, it is for the client to decide whether he will accept a settlement offer . . . .

he may not later be convicted of forgery. However, this general authority does not empower the attorney to sign his client's name to a settlement check or otherwise compromise or settle his cause of action without the express authority of the client.[9] *E.g., Augustus v. John Williams & Associates, Inc.,* 92 N.M. 437, 589 P.2d 1028 (1979); *Navrides v. Zurich Insurance Co.,* 5 Cal.3d 698, 97 Cal.Rptr. 309, 488 P.2d 637 (1971); *Nehleber v. Anzalone,* Fla.App., 345 So.2d 822 (1977); 7A C.J.S. *Attorney and Client* § 214 (1980). And statutes such as § 78–51–32, which define an attorney's authority to act on behalf of his client, do not alter this common-law rule. *See Augustus v. John Williams & Associates, Inc., supra* (compare N.M.S.A., 1978, § 36–2–11 with § 78–51–32).

The defendant argues and the trial court relied on *Bailey v. United States,* 13 F.2d 325 (9th Cir.1926), for the contrary view that an attorney without express authority may endorse a draft made out in the client's name. We reject that rule, which is a minority position, because it is not required by our statute and is not consonant with the proper relationship between attorneys and clients.

In sum, it was error for the trial court to rule that the existence of an attorney-client relationship and the general statutory authority conferred by § 78–51–32 legally authorized the defendant to endorse his client's name on the settlement check. The dismissal of the forgery charge in this case, even though it came late in the trial after the evidence was submitted, was made at defendant's behest and was in effect a ruling that a crime had not been charged.

The appeal from the judgment dismissing the theft charges is dismissed; the judgment dismissing the forgery charge is reversed and the case is remanded.

HALL, C.J., OAKS and HOWE, JJ., and DAVID B. DEE, District Judge, concur.

DURHAM, J., does not participate herein. DEE, D.J., sat.

---

**9.** An exception exists when an attorney is confronted with an emergency, requiring prompt action to protect the client's interest, and con-

---

sultation with the client is impossible. *E.g., Nehleber v. Anzalone,* Fla.App., 345 So.2d 822 (1977).