**STATE of Utah, Plaintiff and Appellant,**

v.

**Thomas C. JACKSON, Defendant and Appellee.**

No. 920346–CA.

Court of Appeals of Utah.

July 27, 1993.

Jan Graham, State Atty. Gen., Kenneth A. Bronston (Argued), Asst. Atty. Gen., Salt Lake City, for plaintiff and appellant.

E. Kent Winward (Argued), Garfield County Public Defender, Cedar City, for defendant and appellee.

Before BILLINGS, JACKSON and RUSSON, JJ.

RUSSON, Associate Presiding Judge:

The State of Utah appeals the trial court's order granting Thomas C. Jackson's motion for a directed verdict on fourteen counts of theft, all class B misdemeanors, in violation of Utah Code Ann. § 76–6–404 (1990). We dismiss the appeal.

## FACTS

In August 1990, Jackson was hired by Harper Construction Company (Harper) as a laborer to work on the Burr Trail outside of Boulder and Escalante, Utah. Approximately one week after he began work, Jackson switched positions from laborer to nighttime security guard for which he was paid $7.00 an hour, without subsistence for travel expenses.

Shortly before dark on September 29, 1990, Grant Johnson and Susan Ferron, a Harper employee, drove to the jobsite to borrow a piece of equipment. They saw Jackson standing next to his truck and horse trailer with the nozzle from the company's diesel fuel tanker in his hands. Johnson testified that Jackson was holding the hose into the back of his trailer and that when he saw the two approaching, he withdrew the hose from the trailer and threw it on the ground. Neither Grant nor Ferron actually saw any fuel coming from the nozzle or heard the tanker fuel pump running.

Ferron told Donald Haws, Jackson's supervisor, what she had seen. Haws chose not to confront Jackson immediately, but decided instead to try to catch him in the act of taking fuel. At about 8:00 p.m. on January 9, 1991, Haws and Billie Jones drove to the jobsite in one of the company's

diesel trucks. As they approached the fuel tanker, they saw Jackson holding the tanker's nozzle into a funnel which was inserted into the fuel tank located in the back of Jackson's horse trailer. When Jackson became aware of Haws's approaching headlights, he hung up the hose, shut off the pump and approached Haws's truck. Haws testified that after he accused Jackson of stealing fuel, Jackson offered Haws his last paycheck, explaining that he was taking six to nine gallons a week because he was a poor man and could not afford to pay the fuel costs of traveling to and from the jobsite. Haws refused the check and fired Jackson.

Jackson was subsequently charged with eighteen counts of theft, all class B misdemeanors, in violation of Utah Code Ann. § 76-6-404 (1990). Counts I and II were dismissed with prejudice by stipulation, and the case went to trial on the remaining sixteen counts.

At trial, Haws testified that he was the only one with authority to allow employees to take fuel. He allowed employees to use fuel in their own personal vehicles only when they were engaged in company business. This policy was announced at the weekly safety meetings, one of which Jackson attended during his initial employment as a laborer. Although Haws had given Jackson permission to take fuel on one earlier occasion when he used his truck to spread pipe and carry other odds and ends, Haws testified that since that occasion Jackson had never asked for, and he had never given, permission to take fuel.

Celeste Bernards, a Garfield County police officer, testified at trial that in an earlier investigative interview, Jackson had admitted having taken enough fuel to get him from Escalante to Boulder, between six and eight gallons of fuel per week. Jackson also told Bernards that several people, including Mr. Haws, had given him permission to take the fuel.

At the conclusion of the State's case, Jackson moved for dismissal of Counts XVI and XVII, on the ground that during the time covered by these two counts, he did not have access to the fuel tanker. The

said motion was granted. Jackson then moved for a directed verdict on the remaining fourteen counts, under Utah Rule of Criminal Procedure 17(o), which provides:

At the conclusion of the evidence by the prosecution, or at the conclusion of all the evidence, the court may issue an order dismissing any information or indictment, or any count thereof, upon the ground that the evidence is not legally sufficient to establish the offense charged therein or any lesser included offense.

The Court granted the motion and "dismissed [the case] with prejudice," holding that the State had failed to "present sufficient evidence to make out a prima facie case." The State then filed this appeal.

## ANALYSIS

The State argues that the trial court erred in granting Jackson's motion for a directed verdict when there was sufficient evidence to take the case to the jury. Jackson responds that since the trial court's action constituted an acquittal, the State may not appeal this matter. We agree.

The limited circumstances under which the State may appeal an adverse ruling in a criminal trial case are set forth in Utah Code Ann. § 77–18a–1(2) (Supp.1992):

An appeal may be taken by the prosecution from:

(a) a final judgment of dismissal;

(b) an order arresting judgment;

(c) an order terminating the prosecution because of a finding of double jeopardy or denial of a speedy trial;

(d) a judgment of the court holding a statute or any part of it invalid;

(e) an order of the court granting a pretrial motion to suppress evidence when upon a petition for review the appellate court decides that the appeal would be in the interest of justice; or

(f) an order of the court granting a motion to withdraw a plea of guilty or no contest.

While section 77–18a–1(2) authorizes the State to appeal a "final judgment of dis-

missal," it does not authorize the state to appeal an acquittal since doing so would violate the rule against double jeopardy. *United States v. Scott,* 437 U.S. 82, 95–97, 98 S.Ct. 2187, 2196–97, 57 L.Ed.2d 65 (1978). As explained by the Utah Supreme Court in *State v. Musselman,* 667 P.2d 1061 (Utah 1983):

> An appellate court, on principles deeply rooted in the double jeopardy clauses of the Utah and Federal constitutions, and by the very nature of the judicial process itself, may not reassess an acquittal even though the acquittal was made under an incorrect application of the law or an improper determination of the facts. Once a criminal charge has resulted in an acquittal by the trier of fact, the prohibition against double jeopardy prevents that determination from ever again being challenged. It is of no consequence that the determination was made as a matter of law by a directed verdict of acquittal, or as a matter of fact by the trier of fact.

*Id.* at 1065 (citations and footnotes omitted); *accord State v. Willard,* 801 P.2d 189, 191 (Utah App.1990), *cert. denied,* 815 P.2d 241 (Utah 1991); *State v. Chugg,* 749 P.2d 1279, 1280 (Utah App.1988).

■ In determining whether the trial court's order is an appealable dismissal or an unappealable acquittal "we look to the substance of the ruling and not to '[t]he label attached … by a trial judge.'" *State v. Workman,* 806 P.2d 1198, 1202 (Utah App.1991) (quoting *Musselman,* 667 P.2d at 1064), *aff'd,* 852 P.2d 981 (1993); *accord Willard,* 801 P.2d at 191. "There is an acquittal if the prosecution resulted in a finding of not guilty by the trier of facts or in a determination that there was insufficient evidence to warrant a conviction." Utah Code Ann. § 76–1–403(2) (1990).

■ In the case at bar, the trial court ruled at the end of the State's case in chief that "the State failed to present sufficient evidence to make out a prima facie case on any of the remaining counts of the information." Subsequently the Court "dismissed [the case] with prejudice." Thus, although the ruling was labeled a "dismissal," it was based on the trial court's determination that there was insufficient evidence to warrant conviction. Accordingly, under Utah Code Ann. § 76–1–403(2) (1990), such constitutes an acquittal and not a dismissal.[1] *See Musselman,* 667 P.2d at 1064–65; *Willard,* 801 P.2d at 191–92; *Chugg,* 749 P.2d at 1280; *see also Smalis v. Pennsylvania,* 476 U.S. 140, 144–45, 106 S.Ct. 1745, 1748–49, 90 L.Ed.2d 116 (1986) (holding that, whether the trial is to a jury or to the bench, a judgment by the trial court that the evidence is insufficient to convict constitutes an acquittal); *see generally* Fed.R.Crim.P. 29 (abolishing motions for directed verdict in federal cases and replacing them with motions for judgment of acquittal).[2]

## CONCLUSION

On the basis of the foregoing, the appeal is dismissed.

BILLINGS and JACKSON, JJ., concur.

---

1. In fact, to hold otherwise would give the State "two bites at the apple," permitting the State to present its case, and if it loses, to present a stronger case, in direct violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. *See Tibbs v. Florida,* 457 U.S. 31, 41, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652 (1982) (holding that the Double Jeopardy Clause forbids a second trial for the purpose of allowing the prosecution to supply evidence which it failed to muster in the first proceeding); *accord Burks v. United States,* 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1 (1978).

2. Additionally, the other state courts that have addressed this issue have reached the same conclusion. *See, e.g., People v. Martinez,* 191 Colo. 428, 553 P.2d 774, 777 (1976); *State v. Gustin,* 212 Kan. 475, 510 P.2d 1290, 1294–95 (1973); *State v. Detco, Inc.,* 66 Wis.2d 95, 223 N.W.2d 859, 861–65 (Wis.1974).