STATE of Utah, Plaintiff and Appellee,

v.

Mitchell D. BURTON, Defendant and Appellant.

No. 890655–CA.

Court of Appeals of Utah.

Oct. 16, 1990.

Edward K. Brass, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, Barbara Bearnson, Salt Lake City, for plaintiff and appellee.

Before ORME, BENCH and BILLINGS, JJ.

## OPINION

ORME, Judge:

Defendant Mitchell D. Burton appeals from a conviction of two counts of second degree felony theft. We reverse.

## FACTS

In February 1984, defendant Burton contracted to sell his home to Jack La Monte Waldron. Burton's home was encumbered by two trust deeds, the first in favor of Valley Bank and Trust Company ("Valley") for $108,300 and a second in favor of First Security Financial ("First Security") for $102,969.80. Valley's trust deed contained a "due on sale" clause, barring assumption of the note obligation by any subsequent purchaser.

Waldron attempted to obtain financing through Valley for the purchase, but did not qualify for a loan. Waldron and Burton then entered into a private financing agreement. Waldron traded the equity in his home for the down payment on Burton's home and executed an "all-inclusive trust deed" for the $210,000 balance due on both notes. Waldron was to make monthly payments of approximately $1,000, depending on the interest rate on the Valley obligation which contained an adjustable rate clause. Waldron was also required to make four large annual payments, corresponding to payments due on Burton's First Security obligation.[1]

Waldron took possession of the home in March 1984 and made monthly payments from March 1984 through February 1986 without incident. His payments were due on the first day of each month. Although the contract did not expressly so state, Waldron understood that Burton immediately applied Waldron's payments to the first and second trust deeds. Indeed, Burton twice asked Waldron to pay him on time so that Burton could pay his lenders without incurring late charges.

In April 1986 Waldron became aware of some difficulty with Valley when he found a note stating that the March and April 1986 payments had not been made. The note was written on the back of a Valley officer's business card and left at the home.

Waldron and Burton had several discussions concerning the missed payments. Each time Burton assured Waldron that payment would be made and explained that the missed payment was due to a check written to Burton that had bounced, unexpectedly leaving him without sufficient funds to pay Valley. Waldron stopped monthly payments to Burton in May 1986, believing that the missed payments to Valley would not be brought current and foreclosure would result. Acting on the delinquent payments and its discovery of violation of the due on sale clause, Valley foreclosed the trust deed on December 23, 1986.

On June 3, 1988, Burton was charged with three counts of second degree felony theft, based on the failure to make three payments to Valley after having received payments from Waldron. At a trial to the court on undisputed facts, Burton was found guilty on two counts. The trial court, appreciating the atypical nature of this case, immediately issued a certificate of probable cause and stayed Burton's sentence. This appeal followed.

## THEFT

Burton was convicted under Utah Code Ann. § 76–6–404 (1990), which states, which our emphasis, that "[a] person commits theft if he obtains or exercises *unauthorized* control over the property of an-

---

1. Waldron was obligated to pay $25,000 on March 1, 1987, March 1, 1988, March 1, 1989 and $26,037.56 on March 1, 1994.

other with a purpose to deprive him thereof." While conceding that the "contract terms are not explicit" on this point, the state postulates that Burton was obligated to pay money received from Waldron directly to Valley. The state presented a composite of evidence; asserting that Waldron's subjective understanding of the contract terms coupled with Burton's requests for timely payment, demonstrate Burton's obligation to remit Waldron's payments to Valley; i.e., he was not authorized to do anything with Waldron's money but pass it along to the lenders.

The terms of the contract underlying this transaction are unambiguous and create no express duty requiring Burton to pay over the sums received from Waldron. We construe unambiguous contracts as a matter of law and accord no deference to the trial court's ruling. *Allstate Enter., Inc. v. Heriford*, 772 P.2d 466, 468 (Utah Ct.App. 1989); *Wilburn v. Interstate Elec.*, 748 P.2d 582, 584–85 (Utah Ct.App.1988).

The contract imposes an uncontroverted requirement that Burton pay Valley and First Security, but does not mention any requirement that Burton apply Waldron's payments to the trust deeds, nor does the contract limit Burton to making payments only with funds received from Waldron. Although Waldron contractually disclaimed liability on the Valley and First Security obligations, the contract also gives Waldron the right to make direct payment on the trust deeds to protect his interest.[2] Even though it was in Waldron's best interest to perpetuate the deception that no sale had transpired, he also had the right to deduct any direct payments made to Valley Bank or First Security from payments owed to Burton. We find nothing in the language of the agreement which requires Burton to apply funds received from Waldron to the Valley and First Security loans.

The state advances a unique theory of criminal liability in this case. It is quite telling that neither side has presented the court with any decision validating or precluding the criminal prosecution of what is essentially a breach of a real estate sale agreement. We are not unreceptive to novel theories of law when they are supported by firm logic and have some basis, even if tangential, in established precedent. However, the more unique the innovation, the greater will be the incumbent burden of sound reasoning and persuasive authority. Such reasoning and authority are notably absent in this case.

In that posture, we are loathe to give approval to the broad construction of section 76–6–404 urged upon us by the state. Were we to do so, it is likely that memorials of commercial transactions would soon be drafted to include boilerplate language designed to impose criminal liability for interruptions in the stream of payments—a circumstance which would normally be nothing more than a breach of contract, traditionally viewed as adequately remedied through an action of law.

## CONCLUSION

For the reasons discussed above, we reverse Burton's conviction.

BENCH and BILLINGS, JJ., concur.

---

2. In practice, this right was somewhat illusory. Waldron could not exercise the direct payment right without Valley Bank discovering that Waldron had colluded with Burton to conceal the sale and prevent Valley Bank's exercise of the due on sale clause. By willfully entangling himself in this deception, Waldron effectively deprived himself of the common remedy of direct payments to a primary lender where an intervening seller fails to meet his or her obligations to the primary lender.