**STATE of Utah, Plaintiff and Appellant,**

v.

**C. Dean LARSEN, Defendant and Appellee.**

**No. 910243–CA.**

Court of Appeals of Utah.

June 5, 1992.

---

587

R. Paul Van Dam and David B. Thompson, Salt Lake City, for plaintiff and appellant.

Larry R. Keller, Salt Lake City, for defendant and appellee.

Before BENCH, GARFF, and ORME, JJ.

## OPINION

BENCH, Presiding Judge:

The State appeals from an "Order Arresting Judgment and Entering Judgment of Acquittal" after a jury found the defendant guilty of theft in violation of Utah Code Ann. § 76-6-404 (1990). We reverse and remand for reinstatement of the guilty verdict and imposition of sentence.

## FACTS

In 1971, defendant formed a corporation known as Granada, Inc., which developed real estate primarily through the partnerships and limited partnerships it created. Defendant served as president of Granada and, along with members of his family, owned the corporation.

In 1979, Granada created Three Crowns Ltd., a limited partnership, and sold limited partnership interests to a number of investors. Three Crowns then purchased a mobile home park in Las Vegas, Nevada. Defendant was one of three general partners in Three Crowns and in 1980, Granada became the acting general partner.

In 1986, when Granada began experiencing a serious cash flow problem, members of Granada's executive committee met regularly to discuss and attempt to remedy the problem. The committee discussed selling

the Three Crowns property, but did not decide to sell it. On October 10, 1986, defendant sold the property without telling any of the members of Granada's executive committee, and deposited the proceeds of $1,073,000 into the Three Crown's bank account. Defendant drew a check for $600,000 on the account, deposited it in Granada's Interoffice Account, and transferred $500,000 to an account for Utah Mortgage Fund, a proposed securities offering by Granada that would allow Granada to bring in additional investment money.

By October 23, 1986, defendant had transferred all the proceeds of the sale of the Three Crowns property to Granada's accounts without the knowledge either of Granada's executive committee members or the limited partners of Three Crowns, who were the alleged victims of the theft. Granada's books listed the proceeds as loans, but no payments were ever made to Three Crowns. The State's expert testified at trial that in March 1986, Granada was already insolvent "to the tune of $20 million," which condition worsened with time.

Limited partners of Three Crowns, including Ned Gregerson and Neil Mortenson, learned of the sale of the partnership property, asked defendant to distribute their shares to them, and instructed defendant on how they wanted their shares of the proceeds to be reinvested. Defendant never distributed the shares to them. Limited partner John Chamberlain requested a cash distribution, but only received a lesser valued interest in another mobile home park, despite defendant's assurances that he would receive the money. Robert Nelson, another limited partner, also did not receive a requested distribution.

In January 1987, Granada's executive committee and lower management determined that Granada had a negative net worth of between $3 to $7 million. Granada filed for bankruptcy. Defendant then made several disbursements of the proceeds from the sale of the Nevada property, but none to the limited partners named above.

Defendant was charged with theft for "exercis[ing] unauthorized control over the property of John Chamberlain, Ned Gregerson, Robert Nelson, Neil Mortenson, and others with a purpose to deprive them thereof." At the close of the State's case, defendant moved to dismiss the charge on the grounds the facts proved did not constitute a public offense. The trial court denied the motion and defendant proceeded with his case. At the close of all the evidence, the defendant again moved to dismiss or, in the alternative, for a directed verdict, arguing that the facts proved did not constitute a public offense. Once again, the court denied defendant's motion. Finally, after the jury returned a guilty verdict, defendant filed a "Motion in Arrest of Judgment, or in the Alternative, for New Trial on Theft Conviction." The trial court granted the motion to arrest judgment and entered a judgment of acquittal.

On appeal, the State contends the trial court erred in concluding the facts proved at trial did not constitute a public offense and in ordering an arrest of judgment on that basis. Defendant disagrees and further argues that because the trial court entered a judgment of acquittal, the State may not appeal.

## STATE'S RIGHT TO APPEAL

■ Utah Code Ann. § 77–18a–1 (Supp. 1991) "delineates a narrow category of cases in which the prosecution may take an appeal." *State v. Waddoups*, 712 P.2d 223, 224 (Utah 1985); *accord State v. Amador*, 804 P.2d 1233, 1234 (Utah App.1990). The State may appeal from:

(a) a final judgment of dismissal;

(b) an order arresting judgment;

(c) an order terminating the prosecution because of a finding of double jeopardy or denial of a speedy trial;

(d) a judgment of the court holding a statute or any part of it invalid;

(e) an order of the court granting a pretrial motion to suppress evidence when upon a petition for review the appellate court decides that the appeal would be in the interest of justice; or

(f) an order of the court granting a motion to withdraw a plea of guilty or no contest.

Utah Code Ann. § 77–18a–1(2). The State, however, may not appeal a valid acquittal "no matter how overwhelming the evidence against the defendant may be." *State v. Musselman,* 667 P.2d 1061, 1064 (Utah 1983).

■ The trial court's ruling was entitled "Order Arresting Judgment and Entering Judgment of Acquittal." To determine whether a ruling is one that the State may appeal under section 77–18a–1(2), "we look to the substance of the ruling and not to '[t]he label attached ... by a trial judge.' " *State v. Workman,* 806 P.2d 1198, 1202 (Utah App.) (quoting *Musselman,* 667 P.2d at 1064), *cert. granted,* 817 P.2d 327 (Utah 1991); *see also State v. Willard,* 801 P.2d 189, 191 (Utah App.1990).

■ "There is an acquittal if the prosecution resulted in a finding of not guilty by the trier of facts or in a determination that there was insufficient evidence to warrant conviction." Utah Code Ann. § 76–1–403(2) (1990). Thus, a ruling that constitutes "a factual resolution in favor of the defendant on one or more of the elements of the offense charged is an acquittal." *Musselman,* 667 P.2d at 1064; *see also Willard,* 801 P.2d at 191. An acquittal is based on an assessment of the evidence, and in a jury trial, "[i]t is within the exclusive province of the jury to judge the credibility of the witness and the weight of the evidence." *State v. Howell,* 649 P.2d 91, 97 (Utah 1982). Therefore, in a case submitted to a jury, only the jury may acquit the defendant.

In Utah, a judge may not acquit a defendant after a jury returns a guilty verdict.[1] Utah rules provide that a judge may issue an order dismissing an information or indictment "[a]t the conclusion of the evidence by the prosecution, or at the conclu-

sion of all the evidence, ... [if] the evidence is not legally sufficient to establish the offense charged therein or any lesser included offense." Utah R.Crim.P. 17(*o* ). The rules also allow a judge to arrest judgment at any time prior to sentencing. Utah R.Crim.P. 23. There is no rule, however, that allows a judge, who is not the trier of fact, to acquit a defendant following a jury verdict of guilty.

In *State v. Myers,* 606 P.2d 250, 251 (Utah 1980), the Utah Supreme Court stated: "When there has been a trial by jury, the state, as well as the defendant, is entitled to the benefit of the findings and the verdict of the jury." *Id.* at 251. In *Myers,* the supreme court reinstated the jury's guilty verdict after concluding the trial court improperly invaded the province of the jury by arresting judgment based on its own weighing of the evidence. *Id.* at 252–53. Only where the trial court is the factfinder does its assessment of the evidence amount to an acquittal, and the State may not appeal in that situation. *See Willard,* 801 P.2d at 191–92 (in a bench trial, a trial court's order based on its assessment of the sufficiency of the evidence is an acquittal).

An arrest of judgment is based on a finding that the facts proved do not constitute a public offense. Under common law and the federal rule, "a judgment can be arrested only on the basis of error appearing on the 'face of the record,' and not on the basis of proof offered at trial." *United States v. Sisson,* 399 U.S. 267, 281, 90 S.Ct. 2117, 2125, 26 L.Ed.2d 608 (1970). The Utah rule is not as limiting and requires a trial court to "arrest judgment if the facts proved or admitted do not constitute a public offense, or the defendant is mentally ill, or there is other good cause for the arrest of judgment." Utah R.Crim.P. 23. The Utah rule allows a judge to look beyond the face of the record at the facts actually proved or admitted in determining whether

---

1. Rule 29 of the Federal Rules of Criminal Procedure allows a federal judge to enter a judgment of acquittal following a jury verdict of guilty. *See United States v. Martin Linen Supply Co.,* 430 U.S. 564, 565–66, 97 S.Ct. 1349, 1351–52, 51 L.Ed.2d 642 (1977). The federal scheme also provides that the government may appeal from a judge-entered acquittal following a jury verdict of guilty, pursuant to 18 U.S.C. § 3731. *United States v. Wilson,* 420 U.S. 332, 352–53, 95 S.Ct. 1013, 1026, 43 L.Ed.2d 232 (1975).

the alleged conduct was prohibited. *See Workman*, 806 P.2d at 1202. *But see State v. Owens*, 753 P.2d 976, 978 (Utah App.1988) (suggesting Utah rule does not allow the trial court to go beyond the face of the record to consider "proof offered or adduced at trial").

▮ We conclude the trial court's ruling in this case was an arrest of judgment and not an acquittal. The trial court arrested judgment, finding that the facts proved did not constitute a public offense because the defendant, a general partner, could not have committed theft by taking partnership property. Although the trial court's order was also labeled an acquittal, the order was not based on a finding of insufficient evidence. In denying defendant's motion to dismiss at the close of the prosecution's case, the trial court specifically stated that it found there was sufficient evidence. The trial court again found the evidence sufficient when it denied defendant's motion to dismiss at the close of all the evidence. In any event, after a jury verdict of guilty is entered, the trial court may not acquit. Because the trial court's ruling was an arrest of judgment, and not an acquittal, the State has a right to appeal.

### THEFT OF PARTNERSHIP PROPERTY

The State contends the trial court erred in concluding the facts proved or admitted at trial do not constitute a public offense. Defendant responds that the trial court's action was proper because the State advances a unique or novel theory in prosecuting defendant for theft, and the proper remedy for defendant's actions exists in the civil arena.

▮ "[T]he power to define crimes ... is vested in the legislature." *State v. Green*, 757 P.2d 462, 463 (Utah 1988). "In the absence of a legislative expression to the contrary, courts have ordinarily held that a partner cannot be guilty of larceny for misappropriating firm property, with any such defalcations left for resolution in the civil arena." *People v. Zinke*, 76 N.Y.2d 8,

556 N.Y.S.2d 11, 13, 555 N.E.2d 263, 265 (1990). The common-law theory is that because partners are co-owners of partnership property, they cannot misappropriate what is already theirs. *Id.; Patterson v. Bogan*, 261 S.C. 87, 198 S.E.2d 586, 588 (1973); *State v. Birch*, 36 Wash.App. 405, 675 P.2d 246, 248 (1984) (legislatively overruled—theft of partnership property is now a crime in Washington, *State v. Webb*, 64 Wash.App. 480, 824 P.2d 1257, 1263 (Wash. App.1992)); Jane M. Draper, Annotation, *Embezzlement, Larceny, False Pretenses, or Allied Criminal Fraud by a Partner*, 82 A.L.R.3d 822, 825 (1978).

▮ The Utah legislature has chosen to abandon the common-law theory. Utah Code Ann. § 76–6–404 (1990) states: "A person commits theft if he obtains or exercises unauthorized control over the property of another with a purpose to deprive him thereof." Utah's theft statute further provides that *"[i]t is no defense under this part that the actor has an interest in the property or service stolen if another person also has an interest that the actor is not entitled to infringe."* Utah Code Ann. § 76–6–402(2) (1990) (emphasis added). One commentator has explained how subsection 76–6–402(2) applies to theft of partnership property:

> Under subparagraph (2), one may be prosecuted for theft if he takes the property of another, although the actor had an interest in it. For example, if a member of a partnership withdraws, without the consent of the other, money from the partnership account so as to infringe upon the rights of the other partner, such withdrawal could constitute theft, although the actor had an interest in the account.

Jay V. Barney, *Utah Criminal Code Commentary* 185 (1967), (found in Loren Dale Martin, *Utah Criminal Code Outline* (1973)).

In taking this approach, Utah has followed the Model Penal Code.[2] The com-

---

2. Model Penal Code § 223.0(7) defines "property of another" to include "property in which any person other than the actor has an interest which the actor is not privileged to infringe, regardless of the fact that the actor also has an interest in the property."

ments to the Model Penal Code explain that the "comprehensive definition of 'property' is intended to abrogate whatever still survives of the artificial common-law restrictions on the scope of larceny and the other theft offenses." Model Penal Code § 223.2 comment 3 (Official Draft and Revised Comments 1980); *see also* Draper, 82 A.L.R.3d at 827; 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 8.4, n. 38 and accompanying text (1986). Therefore, under the language of the Utah statute and the Model Penal Code, a partner may be convicted of theft of partnership property.[3] *See* Model Penal Code § 223.2 comment 4; *Wharton's Criminal Law*, § 419 and n. 45 (1980).

Defendant contends that even if Utah law is such that a partner may be convicted for theft of partnership property, he was not charged with theft of partnership property, but with taking the property of four individual partners, and because the partners have a remedy in the form of a civil action, criminal prosecution is precluded. We disagree.

■ To obtain a conviction for theft, the State does not have to prove who owned the property. The State must prove "only that the accused obtained or exercised unauthorized control over the 'property of another.'" *State v. Simmons*, 573 P.2d 341, 343 (Utah 1977). Thus, the distinction defendant draws between partnership property and the property of individual partners is not determinative.

■ In addition, the Utah Supreme Court has indicated that the existence of a civil remedy does not excuse criminal conduct. *See State v. Walton*, 646 P.2d 689, 691 (Utah 1982). Defendant nevertheless relies upon this court's decision in *State v. Burton*, 800 P.2d 817 (Utah App.1990) for the proposition that if there is a civil remedy, criminal prosecution is precluded. *Burton* does not so hold. In *Burton*, we

found, as a matter of law, that a contract between Burton and Waldron imposed no legal duty upon Burton to use the specific funds he received from Waldron to pay the bank. *Id.* at 819. Therefore, we reversed Burton's theft conviction because there was no legal basis for finding that Burton exercised "unauthorized control" over the funds paid by Waldron to Burton. We then indicated that a civil action was traditionally viewed as an adequate remedy in such cases. *See id.*

■ In the present case, the trial court relied on *Burton*, finding that although "the facts proved at trial may conceivably give rise to civil liability, ... such facts do not constitute the public offense of theft." In contrast to *Burton*, this defendant was not authorized as a matter of law to deal with partnership property as he wished. Although the partnership agreement granted the general partners numerous powers, it contained the limitation that a general partner exercise those powers only in the best interests of the partnership. The agreement did not authorize defendant to deal with partnership property in a manner that he knew was not in the partnership's best interests. Therefore, in this case, there was a legal basis for finding "unauthorized control," and it was for the jury to decide whether a theft was committed.

## CONCLUSION

Based on the foregoing, we conclude that under Utah's statutory scheme, a partner may be convicted of theft for exercising unauthorized control over partnership property and that *Burton* does not preclude criminal liability in this case. Therefore, we conclude, the trial court erred in determining the facts proved at trial do not constitute a public offense, and in arresting judgment on that basis. Accordingly, we

---

**3.** Other jurisdictions also provide that a partner may be convicted for theft of partnership property. *See, e.g., People v. Sobiek*, 30 Cal.App.3d 458, 106 Cal.Rptr. 519, 525–26, *cert. denied*, 414 U.S. 855, 94 S.Ct. 155, 38 L.Ed.2d 104 (1973) ("It is both illogical and unreasonable to hold that a partner cannot steal from his partners merely because he has an undivided interest in the partnership property. Fundamentally, stealing that portion of the partners' shares which does not belong to the thief is no different from stealing the property of any other person."); *State v. Siers*, 197 Neb. 51, 248 N.W.2d 1, 6 (1976); *Webb*, 824 P.2d at 1263.

reverse and remand for reinstatement of the jury verdict and sentencing.

GARFF and ORME, JJ., concur.