STATE of Utah, Plaintiff and Appellee,

v.

C. Dean LARSEN, Defendant and Appellant.

No. 930286–CA.

Court of Appeals of Utah.

May 18, 1994.

Larry R. Keller, Salt Lake City, for appellant.

Jan Graham and J. Frederic Voros, Jr., Salt Lake City, for appellee.

Before DAVIS, GREENWOOD and JACKSON, JJ.

## OPINION

JACKSON, Judge:

C. Dean Larsen appeals from a jury verdict convicting him of one count of theft under Utah Code Ann. § 76–6–404 (1990), and from the trial court's denial of his motion for a new trial. We affirm.

## FACTS

The facts of this case were stated by this court in *State v. Larsen*, 834 P.2d 586 (Utah App.), *cert. denied*, 843 P.2d 1042 (Utah 1992) (*Larsen I*).

In 1971, Defendant [Larsen] formed a corporation known as Granada, Inc., which developed real estate primarily through the partnerships and limited partnerships it created. Defendant served as president of Granada and, along with members of his family, owned the corporation.

In 1979, Granada created Three Crowns Ltd., a limited partnership, and sold limited partnership interests to a number of investors. Three Crowns then purchased a mobile home park in Las Vegas, Nevada.

In 1986, when Granada began experiencing a serious cash flow problem, members of Granada's executive committee met regularly to discuss and attempt to remedy the problem. The committee discussed selling the Three Crowns property, but did not decide to sell it. On October 10, 1986, defendant sold the property without telling any of the members of Granada's executive committee, and deposited the proceeds of $1,073,000 into the Three Crown's bank account. Defendant drew a check for $600,000 on the account, deposited it in Granada's Interoffice Account, and transferred $500,000 to an account for Utah Mortgage Fund, a proposed securities offering by Granada that would allow Grana-

da to bring in additional investment money.

By October 23, 1986, defendant had transferred all the proceeds of the sale of the Three Crowns property to Granada's accounts without the knowledge either of Granada's executive committee members or the limited partners of Three Crowns, who were the alleged victims of the theft. Granada's books listed the proceeds as loans, but no payments were ever made to Three Crowns. The State's expert testified at trial that in March 1986, Granada was already insolvent "to the tune of $20 million," which condition worsened with time.

Limited partners of Three Crowns, including Ned Gregerson and Neil Mortenson, learned of the sale of the partnership property, asked defendant to distribute their shares to them, and instructed defendant on how they wanted their shares of the proceeds to be reinvested. Defendant never distributed the shares to them. Limited partner John Chamberlain requested a cash distribution, but only received a lesser valued interest in another mobile home park, despite defendant's assurances that he would receive the money. Robert Nelson, another limited partner, also did not receive a requested distribution.

In January 1987, Granada's executive committee and lower management determined that Granada had a negative net worth of between $3 to $7 million. Granada filed for bankruptcy. Defendant then made several disbursements of the proceeds from the sale of the Nevada property, but none to the partners named above. *Id.* at 587–88.

Larsen was charged with theft, a second degree felony, pursuant to Utah Code Ann. § 76-6-404 (1990). After trial, the jury returned a guilty verdict. Larsen then filed a motion to arrest judgment or, in the alternative, for a new trial. Judge Leonard H. Russon granted the motion in arrest of judgment, set aside the jury verdict, and granted a judgment of acquittal in the case. Judge Russon believed the facts proved did not constitute a public offense because Larsen, a general partner, could not have committed theft by taking partnership property. Judge Russon stated orally that "if my ruling had been otherwise, I would have granted a new trial because I don't think the [jury] instruction clearly outlined that intent as is necessary in the element instructions." However, the written order says nothing about granting a new trial.

The State appealed the order arresting judgment and this court reversed the trial court and remanded the case for reinstatement of the jury verdict and sentencing. *See Larsen I,* 834 P.2d at 591–92.

Judge Murphy was assigned to the remanded case. In October 1992, Larsen filed a "Motion to Reduce Judge Leonard H. Russon's Order Granting New Trial to Writing." Larsen asserted that Judge Russon's "oral finding and order ... granted a new trial on the Theft charge." Judge Murphy denied the motion.

Thereafter, Judge Murphy sentenced Larsen to the statutory term and imposed restitution in an amount to be determined by the Department of Adult Probation and Parole. He imposed no fine. He also stayed Larsen's prison sentence and placed him on probation for thirty-six months. Larsen appeals, challenging Judge Murphy's rulings and judgment.

## ISSUES

Larsen claims the trial court improperly: (1) failed to give certain instructions requested by Larsen and gave one instruction that incorrectly stated the law; (2) allowed evidence to be admitted concerning Larsen's prior convictions of eighteen counts of securities fraud; (3) permitted a witness to testify concerning an investigation of Granada, Inc. for unregistered securities violations; and (4) denied his motion to reduce Judge Russon's oral "finding" to writing.[1]

---

1. Larsen also claims the evidence presented at trial was insufficient to show that he exercised unauthorized control over the property of the

four individuals named in the information and jury instruction No. 23. This court in *Larsen I* addressed this identical issue and determined

## ANALYSIS

### Jury Instructions

Larsen asserts the trial court improperly refused to give certain jury instructions. An appeal challenging the trial court's refusal to give a jury instruction presents a question of law, which we review for correctness. *Ong International (U.S.A.) Inc., v. 11th Ave. Corp.*, 850 P.2d 447, 452 (Utah 1993); *State v. Tennyson*, 850 P.2d 461, 470 (Utah App. 1993).

■ First, Larsen claims the trial court improperly refused to give instructions stating that if a limited partner is entitled to a distribution from the partnership, the limited partner is a creditor of the partnership. Larsen wanted the court to instruct the jury that failure to pay a creditor in satisfaction of a debt does not constitute theft. These proposed instructions attempt to establish that a partner of a limited partnership may not be convicted of theft if the partner exercises unauthorized control over partnership property in such a way that the limited partners do not receive their entitled distributions. This is an incorrect statement of the law and a trial court may refuse to give an instruction that misstates the law. *See State v. Hamilton*, 827 P.2d 232, 238 (Utah 1992). Contrary to Larsen's proposed instructions, Utah law provides that a partner may be convicted of theft for exercising "unauthorized control" over partnership property. *Larsen I*, 834 P.2d 586, 591 (Utah App.1992). Thus, the trial court properly refused the instruction.

■ Second, Larsen asserts the trial court improperly refused to instruct the jury that "[i]n order to convict the Defendant of the crime of Theft, it is necessary for you to find that the intent to steal existed at the time of the taking of the property, and no subsequent felonious intent will suffice." In connection with this claim, Larsen asserts that jury instruction No. 22 was an incorrect statement of the law because it provided that "a purpose to deprive may be found at any period of time in which the Defendant exercised unauthorized control over such proper-

ty." Utah's theft statute, Utah Code Ann. § 76–6–403 (1990), includes the common law embezzlement variation of theft. *State v. Taylor*, 570 P.2d 697, 698 (Utah 1977); *State v. Fowler*, 745 P.2d 472, 474 (Utah App.1987). Intent to embezzle by definition is formed after a person obtains control over the property, not at the time of the taking, as suggested by Larsen. *See State v. Taylor*, 14 Utah 2d 107, 378 P.2d 352, 353–54 (1963). Thus, jury instruction No. 22 was a proper statement of the law.

■ Third, Larsen claims the trial court improperly refused to give the following proffered instruction on good faith:

Good faith, as commonly used, means a belief or state of mind denoting honesty of purpose or freedom from intention to commit theft.

If the evidence in this case leaves you with a reasonable doubt whether the Defendant obtained or exercised control over the property of another in good faith then you should find the Defendant not guilty of Theft.

We believe that instructions No. 26 and No. 27 fully address the good faith concept. Jury instruction No. 26 states that "[i]t is a defense to a charge of Theft that the actor acted in the honest belief that he had the right to exercise control over the property as he did." Further, instruction No. 27 provides that "[i]t is a defense to the crime of Theft that the actor obtained or exercised control over the property or service honestly believing that the owner, if present, would have consented." While a defendant has a right "to have his theory of the case presented to the jury in a clear and understandable way," *Hamilton*, 827 P.2d at 238 (quoting *State v. Potter*, 627 P.2d 75, 78 (Utah 1981)), it "is not error to refuse a proposed instruction if the point is properly covered in the other instructions." *Hamilton*, 827 P.2d at 238 (quoting *State v. Sessions*, 645 P.2d 643, 647 (Utah 1982)). Further, the instructions given are taken directly from Utah Code Ann. § 76–6–402 (1990), which outlines the

that a partner may be convicted of theft of partnership property and that in order to obtain a conviction for theft, the State does not have to

prove who owned the property. *Larsen I*, 834 P.2d 586, 590–91 (Utah App.1992).

available defenses to a theft charge. Accordingly, because other jury instructions adequately cover the concept of good faith, we conclude that the trial court properly refused to give the proffered instruction.

### Evidence of Prior Convictions

■ Larsen asserts the trial court improperly admitted evidence concerning his conviction of eighteen counts of securities fraud because the convictions of securities fraud did not involve dishonesty or false statement. Rule 609(a)(2) of the Utah Rules of Evidence provides that for the purpose of attacking the credibility of any witness, "evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment." Dishonesty and false statement applies to any crime involving "some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully." *State v. Bruce,* 779 P.2d 646, 654 (Utah 1989) (quoting *United States v. Smith,* 551 F.2d 348, 362 (D.C.Cir.1976); *see State v. Wight,* 765 P.2d 12, 18 (Utah App.1988) ("[i]f honesty was involved, evidence of a prior conviction is automatically admissible under 609(a)(2)"). Dishonesty and false statement applies to crimes such as "criminal fraud, embezzlement, or false pretense." *Bruce,* 779 P.2d at 654 (quoting *Smith,* 551 F.2d at 362). Securities fraud fits in the category of criminal fraud. *See* Utah Code Ann. § 61–1–1, –30 (1993). Thus, securities fraud involves dishonesty and false statement. Accordingly, the trial court's admission of evidence concerning Larsen's prior conviction was proper.

### Evidence of Investigation

■ Larsen claims the admission of testimony by John Baldwin violated rules 403 and 404 of the Utah Rules of Evidence because the evidence was unfairly prejudicial and was used to "assassinate his character." Mr. Baldwin had previously been employed as the director of the Utah Securities Division and before that as an assistant Utah Attorney General. He was asked by the prosecution if he was aware of an investigation of Granada, Inc. by the Utah Securities Division subsequent to 1985. Mr. Baldwin related his knowledge of an investigation for the sale of unregistered securities and stated that the amount of money invested in the unregistered securities was "millions of dollars."

Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." A trial court's rule 403 determination will not be disturbed absent an abuse of discretion. *State v. Pena,* 869 P.2d 932, 938 (Utah 1994); *State v. Ramirez,* 817·P.2d 774, 781–82 n. 3 (Utah 1991). We review the trial court's ruling admitting evidence by deciding whether the trial court's decision was beyond the bounds of reasonableness. *State v. Hamilton,* 827 P.2d 232, 239–40 (Utah 1992).

We believe Mr. Baldwin's testimony was probative of Larsen's motive. Larsen needed $500,000 to fund an escrow account as a prerequisite to issuing a new securities offering to raise $15 million. The $15 million was to be used to keep the Granada related entities in business. Thus, Larsen, needing money, had a motive for embezzling money from the limited partnership.

The danger of unfair prejudice, on the other hand, was minimal. "Unfair prejudice means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *State v. Jaimez,* 817 P.2d 822, 825 (Utah App.1991). Testimony that Larsen was under investigation for issuing or attempting to issue unregistered securities is not the type of evidence that would likely present a risk that "the jury's passions would be inflamed." *State v. Branch,* 743 P.2d 1187, 1189 (Utah 1987), *cert. denied,* 485 U.S. 1036, 108 S.Ct. 1597, 99 L.Ed.2d 911 (1988). Further, evidence presents unfair prejudice when it substantially outweighs the probative value of the evidence. *Jaimez,* 817 P.2d at 825. The probative value of the evidence, Larsen's motive, outweighs the possible prejudice in this case. Accordingly, we cannot say the trial court abused its discretion in admitting the evidence under Rule 403.

■ Larsen also asserts the testimony was used to "assassinate the Defendant's character" and thus, violated Rule 404 of the Utah

■■■■■■■■■■■■■■■■■■■■■■■■■

Rules of Evidence. Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, Rule 404(b) also provides that such evidence "may ... be admissible for other purposes, such as proof of motive."

Larsen claims that "the alleged evidence of the Utah Securities Division's investigation was introduced for the sole purpose of attempting to prove that Defendant had been engaged in other bad acts during the period of time that the Three Crowns Limited matters were active." However, as discussed above, the testimony at issue established Larsen's immediate need for cash, and thus, his motive to divert money from the limited partnership. Accordingly, we find the evidence was properly admissible under Rule 404.

Motion to Reduce Statements to Writing

Larsen asserts the trial judge improperly failed to grant Larsen's motion to reduce Judge Russon's oral statements to writing. During the trial, Judge Russon stated:

I do make the following finding that ... if my ruling had been otherwise, I would have granted a new trial because I don't think the instruction clearly outlined that intent as is necessary in the element instructions.

Judge Russon then entered a written order, prepared by defense counsel, arresting judgment. The written order omits any reference to the judge's comment concerning a new trial.

The element instruction, jury instruction No. 23, provided:

Before you can convict the defendant of the crime of THEFT, as alleged in the Information, you must find from the evidence, beyond a reasonable doubt, all the following elements of that crime:

1. That the Defendant exercised unauthorized control;

2. Over the property of John Chamberlain, Ned Gregerson, Robert Nelson, or Neil Mortenson;

3. *With a purpose to deprive them thereof;*

4. On or about October 10, 1986;

5. In Salt Lake County, State of Utah;

6. and, that the value of said property exceeded $1,000.00.

(Emphasis added.)

Judge Russon stated that he believed instruction No. 23 should have said "intent" rather than "purpose." He stated that "I think you can do something with a purpose but I am not sure that that constitutes intent as required by the statute and defined earlier in the statute of a specific intent to deprive."

Larsen's counsel conceded at oral argument that if the intent instruction accurately reflected the law, Judge Murphy properly refused to grant Larsen's motion for a new trial. We believe the jury instructions concerning intent accurately reflected the law.

■ Jury instructions must be read and evaluated as a whole. *State v. Johnson,* 774 P.2d 1141, 1146 (Utah 1989). They must accurately and adequately inform a jury as to the basic elements of the crime charged. *State v. Roberts,* 711 P.2d 235, 239 (Utah 1985). However, if taken as a whole they fairly instruct the jury on the law applicable to the case, the fact that one of the instructions, standing alone, is not as accurate as it might have been is not reversible error. *State v. Brooks,* 638 P.2d 537, 542 (Utah 1981); *State v. Tennyson,* 850 P.2d 461, 470 (Utah App.1993).

We believe that jury instruction No. 23 adequately instructed the jury on the elements of the theft. The statute outlining the elements of theft states that "[a] person commits theft if he obtains or exercises unauthorized control over the property of another *with a purpose to deprive him thereof.*" Utah Code Ann. § 76–4–404 (1993) (emphasis added). Instruction No. 23 mirrored the language of the theft statute.

Further, the other jury instructions adequately instructed the jury on the issue of intent. Jury instruction No. 22 states that "you must find that he exercised unauthorized control over the property of another while acting with the specific intent or purpose to deprive the other person of his/her property, as defined in these instructions."

Again, instruction No. 16 states that "intent or purpose to deprive, which is an element of the offense of Theft, may be inferred from the Defendant's acts." These instructions inform the jury that "intent" and "purpose" are synonymous. Further, jury instruction No. 19 defines "purpose to deprive" as having the "conscious object" to withhold property permanently or for so extended a period that a substantial portion of its economic value would be lost. This instruction suggests that "purpose" is the same as "intent." Again, instruction No. 24 uses the words "intent" and "purpose to deprive" interchangeably. Instruction No. 15 states the necessity of and defines "intent" as the mental state with which a person acts," a definition congruous with the definition of "purpose to deprive."

Thus, we conclude that taken as a whole, the jury instructions fairly instructed the jury on the law applicable to the case. Just because the "element" jury instruction said "purpose to deprive" rather than "intent" is not reversible error. Rather, the instruction properly followed the language of the theft statute and additional instructions clearly defined the requisite intent. Accordingly, we find that Judge Murphy properly denied the motion to reduce the oral statements to writing and grant a new trial.

## CONCLUSION

The trial court properly refused to give certain instructions requested by Larsen and the jury instructions given were legally sufficient. The trial court also properly allowed evidence to be admitted concerning Larsen's prior convictions on securities fraud and properly permitted a witness to testify concerning an investigation of Granada, Inc. for securities violations. Further, Judge Murphy properly denied Larsen's motion to reduce Judge Russon's oral "finding" to writing because the jury was adequately informed as to the intent element of theft under Utah Code Ann. § 76-6-404 (1990). Accordingly, we affirm the trial court's determination.

DAVIS and GREENWOOD, JJ., concur.